# IN THE SUPREME COURT OF TEXAS

═══════════

No. 11-0855

═══════════

IN RE NESTLE USA, INC., SWITCHPLACE, LLC, AND NSBMA, LP, RELATORS

═══════════════════════════════════

ON PETITION FOR WRIT OF MANDAMUS

═══════════════════════════════════

**Argued January 12, 2012**

JUSTICE HECHT delivered the opinion of the Court.

In this original proceeding, petitioners seek a declaration that the Texas franchise tax[1] is unconstitutional, an injunction prohibiting its collection, and mandamus relief compelling the Comptroller to refund the taxes they paid from 2008 through 2011. Petitioners did not pay their taxes under protest or request a refund from the Comptroller, statutory prerequisites to taxpayer suits in the district court[2] but not, relators contend, for suit in this Court. We disagree. We hold that the statutory prerequisites are conditions on the legislative waiver of the State's immunity from suit. Accordingly, we dismiss the case for want of jurisdiction.

Petitioners are Nestle USA, Inc., a Delaware corporation, Switchplace, LLC, a Texas limited-liability company, and NSMBA, LP, a Texas limited partnership. Nestle and its affiliates manufacture and distribute food and beverages in the United States. In Texas, Nestle engages only

---

[1] TEX. TAX CODE §§ 171.0001-.501.

[2] *Id*. §§ 112.051-.052, 112.151.

in wholesale activities. Switchplace, headquartered in Dallas, is a global temporary housing company that provides accommodations for relocation, business travel, temporary assignments, and other related services for businesses and their employees. NSMBA rents large equipment, such as generators, air conditioners, cooling towers, and trailers, for use in construction. Petitioners contend that the Texas franchise tax violates the Equal and Uniform Clause of the Texas Constitution[3] and the Equal Protection,[4] Due Process,[5] and Commerce Clauses[6] of the United States Constitution.

Taxpayer suits generally, and suits challenging the franchise tax in particular, are permitted by chapter 112 of the Tax Code. Section 112.052(a) provides that "[a] person may bring suit against the state to recover [a] . . . franchise . . . tax . . . if the person has first paid the tax under protest as required by Section 112.051".[7] Section 112.051 applies to a tax collected by the Comptroller "under any law".[8] It requires that the protest must be submitted with the payment,[9] must be in writing,[10] and must "state fully and in detail each reason for recovering the payment."[11] A copy of the protest must

---

[3] TEX. CONST. art. VIII, § 1(a).

[4] U.S. CONST. amend. XIV, § 1.

[5] *Id.*

[6] *Id.* art. I, § 8.

[7] TEX. TAX CODE § 112.052(a).

[8] *Id.* § 112.051(a).

[9] *Id.* § 112.052(a).

[10] *Id.* § 112.051(b).

[11] *Id.*

be attached to the original petition,[12] and "[t]he issues to be determined in the suit are limited to those arising from the reasons expressed in the written protest as originally filed."[13] Suit must be brought against the tax collector, the Comptroller, and the Attorney General[14] within ninety days after the protest payment is made.[15] Chapter 112 also allows injunctive relief, subject to conditions that include the prior filing of a statement of grounds with the Attorney General, and either the payment of taxes due or the posting of a bond for twice the amount due.[16]

Chapter 112 also allows a taxpayer to sue following the Comptroller's denial of an administrative refund claim.[17] The taxpayer must move the Comptroller for rehearing of the denial of the claim, pay any additional tax found due,[18] and bring suit against the Comptroller and Attorney General[19] within thirty days after the motion is denied.[20]

Chapter 112 allows no other actions to challenge or seek refunds of the taxes to which it applies. Section 112.108 prohibits the issuance of any "restraining order, injunction, declaratory judgment, writ of mandamus or prohibition, order requiring the payment of taxes or fees into the

---

[12] *Id.* § 112.053(c).

[13] *Id.* § 112.053(b).

[14] *Id.* § 112.053(a).

[15] *Id.* § 112.052(b).

[16] *Id.* § 112.101(a); *see also* §§ 112.1011-.108.

[17] *Id.* § 112.151.

[18] *Id.* § 112.151(a)(2), (3).

[19] *Id.* § 112.151(b).

[20] *Id.* § 112.151(c).

registry or custody of the court, or other similar legal or equitable relief against the state or a state agency relating to the applicability, assessment, collection, or constitutionality of a tax"[21] other than an order issued as provided under the statute.[22] The only exception is that prepayment of the tax as a prerequisite to suit is excused when it "would constitute an unreasonable restraint on the party's right of access to the courts."[23]

Petitioners did not pay their taxes under protest or ask the Comptroller for a refund.[24] They contend that the requirements of chapter 112 apply only to taxpayer suits brought in the district court and not to one brought as an original proceeding in this Court. Section 112.001 mandates that taxpayer suits permitted by chapter 112 be brought in the district court in Travis County.[25] But in 2006, the Legislature overhauled the Texas Franchise Tax Act and as part of those revisions, in section 24 of the bill, conferred on this Court "exclusive and original jurisdiction over a challenge to the constitutionality of this [bill] or any part of this [bill]".[26] Petitioners argue that section 24 jurisdiction creates a right to sue independent of chapter 112.

---

[21] *Id*. § 112.108.

[22] *Id.* §§ 112.101-.108 ("Subchapter C. Injunctions").

[23] *Id*.

[24] Switchplace filed an amended return in 2008 that resulted in a non-related refund claim of $15,729.39. No portion of that refund claim was denied.

[25] *Id*. § 112.001.

[26] Act of May 2, 2006, 79th Leg., 3d C.S., ch. 1, § 24, 2006 Tex. Gen. Laws 1, 40 (House Bill 3).

4

The text of section 24 does not support petitioners' argument. As we noted in *In re Allcat Claims Service, L.P.*,[27] section 24 is simply "a specific, limited exception" to section 112.001.[28] In all other respects, we observed, a taxpayer suit "is subject to chapter 112".[29] We did not specifically consider the applicability of chapter 112's protest-payment and refund-claim prerequisites to section 24 suits because the taxpayer in *Allcat* had complied with chapter 112. But the history of 112 shows the importance of its requirements in all taxpayer suits it permits.

Chapter 112's procedures originated in the Suspense Statute of 1933.[30] The Suspense Statute provided that state taxes could be paid under protest and would then be held in suspense pending resolution of the taxpayer's complaint in a suit brought by him against the public official who had collected the tax. Before then, a taxpayer could challenge a state tax in a suit for injunctive[31] or

---

[27] ___ S.W.3d ___ (Tex. 2011).

[28] *Id*. at ___.

[29] *Id*. at ___.

[30] Act of June 7, 1933, 43d leg., R.S., ch. 214, §1, 1937 Tex. Gen. Laws 637, codified formerly as TEX. REV. CIV. STAT. ANN. art. 7057b, recodified by Act of July 30, 1959, 56th Leg., 3d C.S., ch. 1, § 1, 1959 Tex. Gen. Laws 187, 190-191, as TEX. REV. CIV. STAT. ANN. TAX.-GEN. art. 1.05, recodified by Act of May 31, 1981, 67th Leg., R.S., ch. 389, § 1, 1981 Tex. Gen. Laws 1490, 1511-1517, as TEX. TAX CODE §§ 112.001-.156.

[31] *See Rogers v. Daniel Oil & Royalty Co.*, 110 S.W.2d 891, 894 (Tex. 1937) ("We assume that, absent the suspense statute, the [plaintiff] would have the right . . . to resort to a court of equity for injunctive relief [if not subject to the tax complained of].")

declaratory relief,[32] but could sue for a refund only with legislative permission[33] or by alleging

payment under duress.[34] The Suspense Statute obviated the necessity of proving duress,[35] and to the

extent it offered an adequate remedy at law, would have precluded injunction suits that did not

comply with its provisions.[36] The Suspense Statute was recodified as chapter 112 in 1981. The

statute did not preclude declaratory judgment actions,[37] but in 1989, section 112.108 was added,

making the actions it permitted exclusive for challenging state taxes covered by the chapter.[38] The

[32] *Cobb v. Harrington*, 190 S.W.2d 709, 712 (Tex. 1945) ("This action is for the purpose of obtaining a judgment declaring that respondents are not [subject to the tax and that the tax collectors] are acting wrongfully and without legal authority. The acts of officials which are not lawfully authorized are not acts of the State, and an action against the officials by one whose rights have been invaded or violated by such acts, for the determination and protection of his rights, is not a suit against the State within the rule of immunity of the State from suit.").

[33] *Nat'l Biscuit Co. v. State*, 135 S.W.2d 687, 688 (Tex. 1940) (quoting the Legislature's joint resolution giving permission to sue for a refund of franchise taxes: "There is no provision of law, nor has there been any provision of law whereby this money unlawfully exacted could be returned or recovered except through a direct appropriation by the Legislature . . . .").

[34] *Austin Nat'l Bank v. Shepherd*, 71 S.W.2d 242, 246 (Tex. 1934) ("A person who pays an illegal tax under duress has a legal claim for its repayment.").

[35] *Dallas Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 879 (Tex. 2005) ("In the years after *Nabisco* and *Austin Nat'l Bank*, the Legislature systematically adopted refund mechanisms and protest requirements in various statutes that obviated the need to show business compulsion in many cases. . . . For example, the Legislature adopted mechanisms for the refund of a tax . . . collected by the comptroller . . . .") (internal quotation marks omitted).

[36] *Rogers*, 110 S.W.2d at 894 ("We think [the Suspense Statute] is complete and adequate to protect the protesting taxpayer as to the principal amount paid. It is true that the protesting taxpayer must obey or perform the various procedural provisions of the suspense statute as to time and otherwise, but we are unable to see how this fact can be held to constitute it incomplete or inadequate."); see TEX. TAX CODE § 112.101-.108 (providing the present procedure for injunctive relief).

[37] *Cobb*, 190 S.W.2d at 713 ("The general purpose of the suspense statute is to provide an adequate legal remedy whereby the taxpayer may test the validity of the law imposing the tax or the authority of the official who seeks to enforce payment of the tax, and by providing the remedy, to prevent interference by injunction with the collection of taxes. . . . It does not follow, however, that respondents are precluded by the suspense statute from maintaining this action for a declaratory judgment.").

[38] Act of June 2, 1989, 71st Leg., R.S. ch. 232, § 16, 1989 Tex. Gen. Laws 1070, 1074, adopting TEX. TAX CODE § 112.108. In *R Communications, Inc. v. Sharp*, 875 S.W.2d 314 (Tex. 1994), we held that the Open Courts provision of the Texas Constitution did not allow the Legislature to condition all declaratory relief on prepayment of taxes. Section 112.108 has since been amended to preclude an Open Courts violation. Act of May 26, 1995, 74th Leg.,

actions permitted are a suit after payment under protest, suit for injunction after payment or posting

of a bond, and a suit for a refund.[39]

The rights and restrictions of chapter 112 are part of "the State's entire tax collection

scheme".[40] A section 24 action brought originally in this Court, free of chapter 112's restrictions,

would severely disrupt that scheme. If a taxpayer were not required to lodge its complaints first by

protest or a refund claim, the Comptroller would lack notice of the assertion of illegality, perhaps

— as this case illustrates — for years. From the first Suspense Statute, it has been important that

the tax collector know of disputes and their potential effect on revenues. Were taxpayers permitted

to delay in suing for a refund, the monetary burden of a loss on the State could be greatly increased.

In this case, petitioners acknowledge that if they were to prevail and all franchise taxes determined

to be illegal were refunded to all similarly situated taxpayers, the impact on the state fisc would be

enormous. It is unreasonable to think that the Legislature would have been as cautious as it has been

for nearly seventy years in permitting taxpayer suits and then create an original taxpayer suit in this

Court with no limitations whatever. Section 24 cannot reasonably be read to do so.

Petitioners argue that even if the protest-payment and refund-claim requirements of chapter

112 apply to original proceedings in this Court, they were excused from compliance because protests

and claims were futile; the Comptroller would never forego collection of the franchise tax. But the

---

R.S., ch. 579, § 13, 1995 Tex. Gen. Laws 3374, 3377.

[39] TEX. TAX CODE §§ 112.052, 112.101, and 112.151. Petitioners do not argue that the limitations of these actions is unconstitutional, as did the taxpayers in *R Communications*, 875 S.W.2d at 314-315. Nor do petitioners contend that an *ultra vires* suit against the Comptroller is outside chapter 112's provisions. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).

[40] *R Commc'ns*, 875 S.W.2d at 318.

7

purpose of such procedures is not solely to obtain favorable action by the Comptroller; the procedures require a taxpayer to state complaints specifically, limit the taxpayer to those complaints in a subsequent action, allow the tax collector to consider the impact on revenue, and put the taxpayer on a short clock to sue. Apart from these reasons for not excusing petitioners from compliance with chapter 112, there is an even firmer impediment. Because these taxpayer rights of action are created by statute, waiving the State's immunity from suit, "the courts may act only in the manner provided by the statutes which created the right."[41]

Petitioners have not complied with chapter 112. To compel a tax refund by mandamus is to grant retrospective monetary relief. Retrospective monetary claims, even by way of mandamus or declaratory relief, are generally barred by immunity, absent legislative consent.[42] If chapter 112 does not permit suit, the only possible legislative waiver of immunity is section 24. But a waiver of sovereign immunity must be "clear and unambiguous".[43] Section 24's grant of jurisdiction to this Court is not a clear and unambiguous waiver of immunity.[44]

Therefore, we cannot grant the mandamus relief petitioners request. And, as we held in *Allcat*, we have the constitutional power to grant injunctive and declaratory relief in original

---

[41] *Dan Ingle, Inc. v. Bullock*, 578 S.W.2d 193, 194 (Tex. Civ. App.–Austin 1979, writ ref'd) (citing *Robinson v. Bullock*, 553 S.W.2d 196, 197 (Tex. Civ. App.–Austin 1979, writ ref'd n.r.e.).

[42] *See City of Houston v. Williams*, 216 S.W.3d 827, 828-829 (Tex. 2007) (per curiam); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855-856 (Tex. 2002) ("[P]rivate parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment claim."). *But cf. Austin Nat'l Bank v. Shepherd*, 71 S.W.2d 242, 246 (Tex. 1934) (mandamus proceeding prior to Suspense Statute to compel refund of taxes paid under duress).

[43] TEX. GOV'T CODE § 311.034.

[44] *See Tooke v. City of Mexia*, 197 S.W.3d 342, 342-343 (Tex. 2006) (holding that phrases like "sue and be sued" and "plead and be impleaded" are insufficient to waive immunity).

8

proceedings only as necessary to effectuate mandamus relief.  Since chapter 112 precludes us from granting the latter, we cannot grant the former.

For these reasons, petitioners' action is dismissed for want of jurisdiction.

_____

Nathan L. Hecht
Justice

Opinion delivered:  February 10, 2012