# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-11-00462-CV

**Sanadco Inc., a Texas Corporation; Mahmoud A. Isba, a/k/a Mahmoud Ahmed Abuisba, a/k/a Mike Isba; Walid Abderrahman; Majic Investments, Inc.; Faisal Kahn; Isra Enterprises, Inc.; Hattab Al-Shudifat; Haifa Enterprises, Inc.; EID Corp.; Mohammed S. Al Hajeid; Majdi Rafe Okla Nsairat; and Omar Unlimited, Inc. Individually, Appellants**

**v.**

**The Office of the Comptroller of Public Accounts of the State of Texas; Glenn Hegar, Individually and in his Official Capacity as Comptroller of Public Accounts of the State of Texas; and Ken Paxton in his Official Capacity as Attorney General for the State of Texas, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. D-1-GV-10-000902, HONORABLE TIM SULAK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We grant the Comptroller's motion for rehearing, withdraw our prior opinion and judgment issued on September 26, 2013, and substitute in their place this opinion and judgment affirming the district court's dismissal of Sanadco, Inc.'s counterclaims.

After the Comptroller of Public Accounts performed an audit on a convenience store owned by Sanadco, the Comptroller and the Attorney General (cumulatively the "Comptroller") filed suit against Sanadco to recover delinquent taxes. In response, Sanadco filed various counterclaims against the Comptroller arguing that the manner in which he calculated the amount

of taxes due was under the terms of an unauthorized rule, that many of the actions that he engaged in while conducting his audits were ultra vires, and that the provision of the Tax Code authorizing audits by sampling and projecting was unconstitutional. After Sanadco filed its counterclaims, the Comptroller filed a plea to the jurisdiction contending that the district court did not have jurisdiction over the counterclaims. Subsequent to reviewing the plea and convening a hearing, the district court granted the Comptroller's plea and dismissed Sanadco's counterclaims for lack of jurisdiction. On appeal, Sanadco challenges the dismissal of its counterclaims. We affirm the district court's order granting the Comptroller's plea to the jurisdiction.

## RELEVANT STATUTORY SCHEME AND AUDITING MEMOS

Before delving into the background and issues in this case, a brief overview of the governing framework for this case as well as a brief synopsis of the actions by the Comptroller that form the subject of this case is helpful. Under the Tax Code, convenience stores are required to maintain their sales records for tax purposes, Tex. Tax Code § 151.025, and the Comptroller is authorized to examine and audit the records of convenience-store owners, *id.* §§ 111.004, 151.025. In addition, the Comptroller may use sampling and projection methods for estimating the amount of taxes owed if "the taxpayer's records are inadequate or insufficient." *Id.* § 111.0042(b). Moreover, if the Comptroller "is not satisfied" with the calculated tax owed based on the taxpayer's records, the Comptroller may determine the amount of tax owed from "other information available to the comptroller." *Id.* § 111.008(a).

In addition to requiring convenience stores to maintain sales records, the Tax Code also requires brewers, manufacturers, wholesalers, and distributors of alcoholic beverages to file

2

reports chronicling their sales to stores and listing the stores by name. *Id.* §§ 151.461-.462. Similarly, the Tax Code authorizes the Comptroller to request wholesalers and distributors of tobacco products to file the same type of reports. *Id.* §§ 154.021 (addressing cigarette sales), 155.105 (covering non-cigarette tobacco products). The type of information required in these reports is commonly referred to as H.B. 11 information because the reporting requirements were enacted by House Bill 11 (H.B.11) of the 80th legislature. *See* Act of May 3, 2007, 80th Leg., R.S., ch. 129, §§ 1-3, 2007 Tex. Gen. Laws 159, 159-62.

Once an audit has been performed, the store owner may request a redetermination from the Comptroller within 30 days of receiving notice of the Comptroller's assessment. Tex. Tax Code § 111.009(a), (b). In addition, the owner may also request a hearing on the redetermination, *id.* § 111.009(c), before the State Office of Administrative Hearings, *id.* § 111.00455. If no request for a redetermination is filed within 30 days, "the determination is final on the expiration of the period." *Id.* § 111.009(b).

As an alternative to requesting a redetermination, an individual may pay the assessed taxes and penalties and file a claim for a refund with the Comptroller or pay the taxes and penalties under protest and file suit seeking their recovery.[1] *See id.* §§ 111.104(b), (c), 112.051, .052; *see also In re Nestle USA, Inc.*, 359 S.W.3d 207, 211 (Tex. 2012) (protest, refund, and injunction suits

---

[1] There is one more additional, limited remedy in the form of an action for a restraining order or injunction to prohibit the assessment or collection of a state tax, which action also requires prepayment of the taxes due or the posting of a bond as well as a pre-suit "statement of the grounds on which the order or injunction is sought" filed with the attorney general. Tex. Tax Code § 112.101. This remedy additionally requires a showing that (1) irreparable injury will result to the applicant if the injunction is not granted, (2) no other adequate remedy is available to the applicant, and (3) the applicant has a reasonable possibility of prevailing on the merits of the claim. *Id.* § 112.1011.

provide only means to seek relief from taxes assessed under Chapter 112). A tax-refund claim proceeds to an administrative hearing, after which the Comptroller will issue a decision that becomes final twenty days after service on the taxpayer. *Id.* § 111.105. A tax-refund claimant who is dissatisfied with the decision may file a motion for rehearing, *id.* (c), and then if still dissatisfied may file a suit in district court seeking to recover the amount paid within 30 days after the motion for rehearing is denied, *id.* § 112.151(a), (b), (c).

If pursuing a protest-payment suit, a taxpayer must file a written protest detailing each reason for recovering the payment and submit such protest with payment of the assessed taxes and penalties within six months (or other applicable limitations period) after the deficiency determination becomes final. *Id.* §§ 111.104(c)(3), 112.051(b), (c).

Prior to the passage of H.B. 11, the Comptroller issued a memo entitled AP 92, which provided guidance to auditors performing audits of convenience stores. In the memo, the Comptroller explained that there had been a "lack of uniformity in estimated convenience store audits" and that "mark-up percentages and product mix percentages" were developed to be used in audits "when necessitated by lack of reliable records" or if a store's "records are unavailable, inadequate or unreliable." After H.B. 11 passed, the Comptroller issued another memo to audit personnel entitled AP 122. The new memo updated AP 92 and required auditors to use H.B. 11 information "to produce the most accurate audit results." Sanadco's counterclaims arise from the issuance of these two memos along with various actions taken by the Comptroller when performing his audit of Sanadco.

4

## BACKGROUND

Turning to the facts of this case, Sanadco owns a convenience store, and Mahmoud Isba operates the store and is designated as a responsible person for Sanadco. The Comptroller audited Sanadco and determined that Sanadco had underreported its taxable sales for alcohol and tobacco products. The amount of the deficit was determined using H.B. 11 data. After making his determination, the Comptroller sent a bill for the estimated amount owed and for interest on that amount as well as a penalty.

After receiving notice of the amount due, Sanadco did not seek redetermination of the assessment, *see* Tex. Tax Code § 111.009, or pay any portion of the assessed taxes and penalties and seek statutory relief via a taxpayer refund or protest suit, *see id.* §§ 111.104, 112.151. Accordingly, the Attorney General filed suit to collect the delinquent taxes. In response, Sanadco filed an answer and raised several counterclaims seeking declaratory and injunctive relief against the Comptroller's collection of the taxes, compensatory damages, and attorney's fees. Those counterclaims were made against the Office of the Comptroller, Susan Combs[2] in her official capacity as Comptroller, and Greg Abbott[3] in his official capacity as the Attorney General. Sanadco later amended its answer and counterclaims, adding as counter-plaintiffs several other individuals and companies who had been assessed similar taxes.[4] Unlike Sanadco, the other named counter-

---

[2] Since the events giving rise to this appeal, Glenn Hegar was elected Comptroller. Accordingly, our references to the Comptroller are to him.

[3] Since the events giving rise to this appeal, Ken Paxton was elected Attorney General. Accordingly, our references to the Attorney General are to him.

[4] For ease of reading, we will generally refer to all of the counter-plaintiffs as Sanadco.

plaintiffs all sought redeterminations of their assessed taxes through administrative review, but none of the administrative proceedings had been completed by the time that the individuals were added to the lawsuit.[5]

Regarding its counterclaims, Sanadco alleged eight complaints relevant to this appeal. In its first counterclaim, Sanadco asserted that AP 92 and AP 122 are administrative rules that were not promulgated in compliance with the requirements of the Administrative Procedure Act. *See* Tex. Gov't Code § 2001.038. Accordingly, Sanadco sought a declaration that those memos are invalid administrative rules. In its second counterclaim, Sanadco alleged that the Comptroller engaged in ultra vires actions when he issued AP 92 and AP 122 and thereby authorized auditors to estimate taxes owed by convenience-store owners without "first ascertaining whether adequate records are available" from the taxpayer to perform an audit. For those reasons, Sanadco sought declarations asserting that "the Comptroller is not authorized to estimate convenience store audits using the methods described in AP 92 or AP 122 until their proper adoption, and/or that the authorization of their use is a non-discretionary ultra vires act committed without legal authority." In its third counterclaim, Sanadco contended that the Comptroller acted without legal authority when he improperly instructed auditors to use H.B. 11 information for convenience store audits "without

---

[5] Despite their participation in the administrative redetermination process, the additional counter-plaintiffs later added as parties to the suit do not impact our consideration of whether the trial court had subject-matter jurisdiction over Sanadco's counterclaims, because subject-matter jurisdiction is determined at the time a suit is filed. *See TJFA, L.P. v. Texas Comm'n on Envtl. Quality*, 368 S.W.3d 727, 733 (Tex. App.—Austin 2012, pet. denied); *Bell v. Moores*, 832 S.W.2d 749, 753-54 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (at time suit is filed, court either has jurisdiction or it does not, and jurisdiction cannot subsequently be acquired while suit is pending); *see also Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 774, 776 (5th Cir. 1986) (federal rule of civil procedure 15, pertaining to amendment of pleadings, does not permit plaintiff to amend complaint to substitute new plaintiff in order to cure lack of subject-matter jurisdiction).

first ascertaining whether the determination can be made from the taxpayer's records." Accordingly, Sanadco insisted that the Comptroller's decision to require the use of H.B. 11 data is an ultra vires act and, therefore, sought declarations that the use of H.B. 11 information was improper and that the governing statutes do not allow "the Comptroller to give conclusive effect to the HB11 data."

In its fourth counterclaim, Sanadco alleged that the Comptroller improperly authorized auditors to "use an abbreviated procedure which bypassed examination of the taxpayer's records and authorized an estimation of his tax liability based solely on the invalid H.B. 11 data, without first determining the adequacy of the taxpayer's records." For that reason, Sanadco insisted that the Comptroller was acting ultra vires and sought a declaration that the governing Tax Code provisions do not authorize the abbreviated procedure. In its fifth counterclaim, Sanadco alleged that the Comptroller acted ultra vires by authorizing the imposition of a 50% penalty without proof of fraud or of an intent to avoid the tax as required by the Tax Code. *See* Tex. Tax Code § 111.061(b). In its sixth counterclaim, Sanadco sought a declaration that the provision of the Tax Code authorizing sample and projection audits for estimating taxes owed is unconstitutionally vague and is, "by its nature, a denial of substantive and procedural due process." *See id.* § 111.0042. In its seventh counterclaim, Sanadco alleged that the Comptroller engaged in an unconstitutional taking when he improperly collected sales and use taxes. Lastly, Sanadco challenged the constitutionality of the Tax Code provision authorizing the Comptroller to impose a ten-percent penalty if he believes that the "amount due for a tax period is jeopardized by delay." *See id.* § 111.022.

After Sanadco filed its counterclaims, the Comptroller filed a motion for summary judgment and a plea to the jurisdiction. After reviewing the pleadings, the plea, and Sanadco's response to the plea, the district court signed an order granting the Comptroller's plea dismissing

7

all of Sanadco's counterclaims. The trial court also granted the Comptroller summary judgment on two of Sanadco's eight counterclaims. On appeal, Sanadco contests both the district court's order granting the Comptroller's plea and its order granting the Comptroller summary judgment.

## STANDARD OF REVIEW

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). A party to a lawsuit may challenge a trial court's subject-matter jurisdiction over a case by filing a plea. *Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 156 (Tex. 2007). Determinations regarding whether a trial court has jurisdiction over a case are questions of law, which we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004).

## DISCUSSION

Sovereign immunity protects the State of Texas, its agencies, and its officials from lawsuits unless the legislature expressly gives its consent to the suit. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002). Absent the State's consent to suit, a trial court lacks subject-matter jurisdiction. *Id.* at 855. Sovereign immunity not only bars suits for money damages but also protects the State against suits to "control state action." *Texas Logos, L.P. v. Texas Dept. of Transp.*, 241 S.W.3d 105, 118 (Tex. App.—Austin 2007, no pet.). Therefore, absent an express waiver of sovereign immunity, Sanadco's counterclaims are barred.[6]

---

[6] The fact that Sanadco is a counter-plaintiff rather than a plaintiff does not affect our analysis when reviewing the trial court's ruling on a plea to the jurisdiction, as such determination

8

Sanadco cites two statutes providing limited waivers of immunity—the Administrative Procedure Act, *see* Tex. Gov't Code § 2001.038, and the Uniform Declaratory Judgments Act, *see* Tex. Civ. Prac. & Rem. Code § 37.001 *et seq.*—as well as an exception to waiver, the doctrine of ultra vires, *see City of El Paso v. Heinrich*, 284 S.W.3d 366, 372-73, 380 (Tex. 2009), as conferring jurisdiction on the district court over its counterclaims. However, as discussed below, we conclude that all of these grounds for jurisdiction are preempted by Chapter 112 of the Tax Code, which the supreme court has held provides exclusive remedies for relief from assessed taxes on *any* basis. *See Nestle*, 359 S.W.3d at 211. Because Sanadco did not comply with the mandatory Chapter 112 requirements, the district court has no jurisdiction over any of its counterclaims.

**Statutory prerequisites to taxpayer suits**

The Tax Code waives the State's immunity from suit, but only for specifically enumerated taxpayer actions, each conditioning waiver on certain administrative or other prerequisites to a taxpayer's bringing a suit or claim thereunder. *See* Tex. Tax Code §§ 112.052 (protest suit), .101 (injunction suit), .151 (refund suit); *Nestle*, 359 S.W.3d at 211 (dismissing mandamus cause for want of jurisdiction, where taxpayer sought declaration of constitutionality of franchise tax, injunction prohibiting its collection, and mandamus relief compelling refund of taxes already paid, because taxpayer had not complied with statutory prerequisites of Chapter 112 for

---

considers whether the *non-movant's pleadings* affirmatively demonstrate the trial court's jurisdiction over the challenged causes. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Counter-plaintiffs are the functional equivalents of plaintiffs with respect to whether their claims confer subject-matter jurisdiction on the trial court. *See, e.g.*, *Smith v. Clary Corp.*, 917 S.W.2d 796, 798 n.1 (Tex. 1996) (court must not only have jurisdiction over amount in controversy but also must have subject-matter jurisdiction over counterclaim).

refund, protest, or injunction suit). Regardless of the taxpayer's claims, the *only* permitted taxpayer actions challenging state taxes are "a suit after payment under protest, suit for injunction after payment or posting of a bond, and a suit for a refund." *Nestle*, 359 S.W.3d at 211.

In *Nestle*, the supreme court held that these three statutorily provided taxpayer suits (along with their respective prerequisites to suit) are the *only* means by which a taxpayer may challenge "the applicability, assessment, collection, or constitutionality" of a state tax. *Id.* at 209. "The only exception is that prepayment of the tax as a prerequisite to suit is excused when it 'would constitute an unreasonable restraint on the party's right of access to the courts.'" *Id.* (quoting Tex. Tax Code § 112.108); *see also In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 479 (Tex. 2011) ("[S]ection 112.108 explicitly prohibits any court from granting injunctive or declaratory relief or issuing any writ of mandamus or any other legal or equitable relief not already allowed elsewhere in Chapter 112."). Besides these three avenues for relief, Chapter 112 "allows no other actions to challenge or seek refunds of the taxes to which it applies," including declaratory-judgment actions. *Nestle*, 359 S.W.3d at 209-10; *see also Strayhorn v. Raytheon E-Sys., Inc.*, 101 S.W.3d 558, 572 (Tex. App.—Austin 2003, pet. denied) (when statute provides avenue for attacking agency order, declaratory-judgment action will not lie to provide redundant remedies).

It is undisputed that Sanadco did not engage in an administrative redetermination proceeding or meet any of the statutory requirements for a refund claim or protest suit. Sanadco may not attempt to avoid those administrative and procedural requirements by merely filing counterclaims to a collection suit brought by the Comptroller. If Sanadco were able to pursue its counterclaims "free of Chapter 112's restrictions," the State's "entire tax collection scheme" would be disrupted.

10

*Nestle*, 359 S.W.3d at 211 ("If a taxpayer were not required to lodge its complaints first by protest or refund claim, the Comptroller would lack notice of the assertion of illegality, perhaps—as this case illustrates—for years.").

Sanadco had two adequate, available remedies upon the Comptroller's deficiency determination: (1) a redetermination proceeding or (2) payment of the taxes and pursuit of the Chapter 112 refund or protest procedures. However, Sanadco elected not to pursue either remedy.[7] It may not now attempt to circumvent the statutory prerequisites to taxpayer suits by casting its various challenges to the assessed taxes and penalties as counterclaims seeking declaratory and injunctive relief to the Comptroller's collection actions when Sanadco could and should have availed itself of the exclusive statutory taxpayer-suit procedures. While Sanadco frames its declaratory requests in terms of the validity or constitutionality of "rules," statutes, and alleged ultra vires actions, it is not merely seeking to obtain such declarations but to be relieved, thereby, of its tax assessment and penalty. Chapter 112 of the Tax Code provides an exclusive remedy therefor, and *Nestle* explicitly prohibits any attempt at relief from assessed state taxes on *any* basis except as provided in the chapter.[8]

---

[7] The third Chapter 112 remedy, an action for injunction, is not available to Sanadco under the circumstances alleged in its pleadings because Sanadco had two other adequate remedies at law in the form of a protest suit and a refund suit. *See Berry v. McDonald*, 123 S.W.2d 388, 389 (Tex. Civ. App.—San Antonio 1938, no writ) (holding taxpayer had adequate and complete legal remedy under former version of statute providing for protest suit and, therefore, claim seeking relief in form of enjoining Commissioner of Agriculture from collecting citrus sales tax was improper). However, even if the injunction remedy under section 112.101 were available to Sanadco, it is undisputed that Sanadco did not fulfil any of the statutory prerequisites to suit thereunder, including prepayment of the tax or posting of a bond and filing a pre-suit statement with the Attorney General.

[8] Further, the Comptroller's claim to collect from Sanadco the delinquent taxes did not waive immunity for all purposes but only narrowly waived it for counterclaims that both (1) were "germane

Because Sanadco did not comply with the jurisdictional prerequisites of Chapter 112, we hold that the trial court did not have jurisdiction over any of Sanadco's eight counterclaims, and the trial court did not err in granting the Comptroller's plea to the jurisdiction.[9] We need not reach Sanadco's issues about the trial court's summary judgment because the Comptroller's plea to the jurisdiction was directed to all eight of Sanadco's counterclaims, and our jurisdictional determination is dispositive of all issues on appeal. *See* Tex. R. App. P. 47.1.

**CONCLUSION**

Having overruled each of Sanadco's issues, we affirm the district court's order dismissing all of Sanadco's counterclaims on jurisdictional grounds.

---

to, connected to, and properly defensive to claims asserted by" the Comptroller and (2) operated as damage offsets against the monetary relief sought by the Comptroller. *See Manbeck v. Austin Indep. Sch. Dist.*, 381 S.W.3d 528, 533 (Tex. 2012). It is without question that the later-joined counter-plaintiffs' counterclaims did not meet either of these requirements. Also, because the Comptroller's action sought collection of a particular, final amount of taxes, penalties, and interest—and Sanadco did not challenge that final amount via any of the available administrative and statutory procedures already discussed—Sanadco's counterclaims cannot be considered "properly defensive" or offsets thereto.

[9] We limit our holding to cases in which a taxpayer seeks relief from a tax assessment that has become a final liability and is no longer subject to review through administrative procedures; we do not hold that Chapter 112 preempts every suit challenging a Comptroller rule or tax statute's constitutionality. *C.f.*, *Texas Entm't Ass'n, Inc. v. Combs*, 431 S.W.3d 790, 795 (Tex. App.—Austin 2014, pet. denied) (citing *Combs v. Texas Entm't Ass'n, Inc.*, 287 S.W.3d 852, 864-65 (Tex. App.—Austin, 2009), *rev'd on other grounds*, 347 S.W.3d 277 (Tex. 2011)) (on remand, citing with approval its previous opinion holding that declaratory-judgment action challenging constitutionality and implementation of new tax statute was not preempted by Chapter 112 of Tax Code); *Combs v. Entertainment Publ'ns Inc.*, 292 S.W.3d 712, 723 (Tex. App.—Austin 2009, no pet.) (affirming trial court's denial of plea to jurisdiction in suit in which taxpayer sought declaratory and injunctive relief to prevent Comptroller from implementing allegedly invalid rule). Because Sanadco sought injunctive relief from liability for the tax long after completion of the administrative process and the deficiency assessment had become final, the facts here are distinguishable from those cases in which the taxpayers sought declarations of the validity or constitutionality of rules and statutes and their threatened enforcement prior to finality of an agency determination.

_____

David Puryear, Justice

Before Justices Puryear, Henson, and Goodwin
    Justice Henson not participating

Affirmed on Motion for Rehearing

Filed:   March 25, 2015

13