

# NUMBER 13-21-00011-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

L.L.C., INC. AND
FUN HOLDINGS, LLC,                                             Appellants,

v.

GLENN HEGAR, COMPTROLLER OF
PUBLIC ACCOUNTS OF THE STATE
OF TEXAS AND KEN PAXTON,
ATTORNEY GENERAL OF THE
STATE OF TEXAS,                                               Appellees.

### On appeal from the 53rd District Court
### of Travis County, Texas.

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Hinojosa[1] and Silva
### Memorandum Opinion by Justice Silva

---

[1] The Honorable Leticia Hinojosa, former Justice of this Court, was a member of the panel at the time this case was submitted for oral argument but did not participate in this decision because her term of office expired on December 31, 2022.

This is an appeal from the trial court's order granting a plea to the jurisdiction filed by appellees Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas (collectively the State) and dismissing the claims of appellants L.L.C., Inc. (LLCI) and Fun Holdings, LLC (Fun). We affirm.[2]

## I. FACTUAL AND LEGAL BACKGROUND

This appeal arises out of a tax dispute. To provide context to the parties' legal arguments, we begin with an overview of the relevant statutory framework, first explaining the fee in dispute and then addressing the mechanisms by which taxpayers can challenge those fees. We then proceed to the procedural history in this case before turning to the merits of the parties' arguments.

### A. The Sexually Oriented Business Fee

In 2007, the Texas Legislature enacted statutes to impose a tax of $5 per customer entry on certain sexually oriented businesses, known as the "SOB Fee." *See* TEX. BUS. & COM. CODE ANN. §§ 102.051–.056; *id.* § 102.052(a) (the "SOB Fee Statute"). The Texas Tax Code applies to the administration, payment, collection, and enforcement of that fee. *See id.* §§ 102.053, 102.056. The SOB Fee is imposed on each "sexually oriented business" (SOB), which is defined in the statute as a nightclub, bar, restaurant, or similar commercial enterprise that:

> (A)  provides for an audience of two or more individuals live nude

[2] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). Because this is a transfer case, we apply the precedent of the Austin Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

entertainment or live nude performances; and

(B) authorizes on-premises consumption of alcoholic beverages, regardless of whether the consumption of alcoholic beverages is under a license or permit issued under the Alcoholic Beverage Code.

*Id*. § 102.051(2). The SOB Fee Statute defines "nude" as:

(A) entirely unclothed; or

(B) clothed in a manner that leaves uncovered or visible through less than fully opaque clothing any portion of the breasts below the top of the areola of the breasts, if the person is female, or any portion of the genitals or buttocks.

*Id*. § 102.051(1).

## B. Taxpayer Suits

The Texas Tax Code provides two procedural routes for taxpayers to challenge a disputed tax: an administrative route and a "payment under protest" route. *See* TEX. TAX CODE ANN. §§ 111.022, 112.051–.052. As relevant here, § 112.052 of the tax code, entitled "Taxpayer Suit After Payment Under Protest," provides as follows:

(a) A person may bring suit against the state to recover a tax required to be paid to the state if the person has first paid the tax under protest as required by [§] 112.051.

(b) A suit under this section must be brought before the 91st day after the date the protest payment was made, or the suit is barred.

(c) The state may bring a counterclaim in a suit brought under this section if the counterclaim relates to taxes imposed under the same statute and during the same period as the taxes that are the subject of the suit and if the counterclaim is filed not later than the 30th day before the date set for trial on the merits of the suit. The state is not required to make an assessment of the taxes subject to the counterclaim under any other statute, and the period of limitation applicable to an assessment of the taxes does not apply to a counterclaim brought under this subsection.

3

(d)   A taxpayer shall produce contemporaneous records and supporting documentation appropriate to the tax for the transactions in question to substantiate and enable verification of a taxpayer's claim relating to the amount of the tax, penalty, or interest that has been *assessed or collected or will be refunded*, as required by Section 111.0041.[3]

*Id.* § 112.052 (emphasis added).

Section 112.051 has three statutory prerequisites for a taxpayer to bring suit in district court pursuant to § 112.052. *See id.* § 112.051. First, the taxpayer must submit a protest with the payment for the "amount claimed by the state" if the taxpayer "contends that the tax [or fee] is unlawful or that the public official charged with the duty of collecting the tax [or fee] may not legally demand or collect the tax [or fee]." *Id.* § 112.051(a). Second, the protest "must be in writing" and "state fully and in detail each reason for recovering the payment." *Id.* § 112.051(b). Third, the protest payment must be made "within the period of time set out in [§ 111.104(c)(3)] for the filing of refund claims." *Id.* § 112.051(c). Suit must then be brought "before the 91st day after the date the protest payment was made, or the suit is barred." *Id.* § 112.052(b).

## C.   Procedural History

LLCI and Fun brought a lawsuit in Travis County district court on May 11, 2020, alleging that the Comptroller unfairly assessed the SOB Fee against them but not against similar businesses that also serve alcohol and employ female employees with exposed breasts and buttocks, like certain sports bars and grills. In their petition, appellants claimed that "[d]uring the Relevant Assessment Period, the Comptroller chose to enforce

---

[3] Section 111.0041 deals with records and the burden to produce and substantiate claims. Under this section, taxpayers "shall produce contemporaneous records and supporting documentation appropriate to the tax or fee for the transactions in question to substantiate and enable verification of the taxpayer's claim" and must maintain these records for four years. *See* TEX. TAX. CODE ANN. § 111.0041.

4

the SOB Fee against certain types of establishments (adult cabarets and specifically latex clubs) but not against other businesses which also qualify as SOBs under the SOB Statute, and that disparate, discriminatory, and selective enforcement is unconstitutional."[4]

The petition included copies of both appellants' protest payments for the assessment period of January 1, 2020, through March 31, 2020, along with the related protest letters. For example, LLCI provided documentation that it electronically submitted $46,375 to the State with a protest letter; Fun showed it submitted $16,500 to the State under protest, as well. Similarly, for the assessment period of April 1, 2020, through June 30, 2020, LLCI submitted a copy of its electronic $10,565 payment, and Fun submitted a copy of its $1,770 electronic payment, again with the relevant protest letters attached. It is undisputed that the Comptroller received and accepted these funds.

The State filed special exceptions on August 4, 2020, and a plea to the jurisdiction on August 13, 2020. In its plea to the jurisdiction, the State argued that it did not "assess" a fee—specifically, it argued the Comptroller did not "audit, assess, make a jeopardy or deficiency determination, or issue a refund denial." *See id.* § 112.052(d). Instead, the State contended that appellants, in compliance with the SOB Fee Statute, voluntarily submitted their fees for two assessment periods in 2020. The State argues that because

---

[4] We note that the Fifth Circuit Court of Appeals handed down a related opinion regarding the constitutionality of the SOB Fee Statute during the pendency of this appeal. *See Tex. Ent. Ass'n v. Hegar*, 10 F.4th 495, 512, 514 (5th Cir. 2021) (holding that the "clothing rule" implemented by the Comptroller failed to meet the strict scrutiny test required for the First Amendment, but absent more specific evidence, did not violate the Equal Protection Clause of the Fourteenth Amendment). The "clothing rule" considered in *Texas Entertainment* was a rule promulgated by the Comptroller to include dancers who wear opaque latex over their breasts in the definition of "nude." *Id.* at 501.

no tax was "assessed," the waiver of sovereign immunity under § 112.052 was never triggered. *See id.*

The trial court agreed with the State and granted the plea to the jurisdiction. This appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (authorizing an appeal from an interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit").

## II.    PLEA TO THE JURISDICTION

"Sovereign immunity is the well-established doctrine that no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 731 (Tex. 2020) (cleaned up). Sovereign immunity deprives a trial court of jurisdiction over lawsuits in which the State and its various agencies have been sued unless immunity is clearly and unambiguously waived by the legislature. *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011); *see Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012). "Immunity from suit implicates a court's subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction." *Nettles*, 606 S.W.3d at 731; *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). "[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." TEX. GOV'T CODE ANN. § 311.034.

A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). "A plaintiff has the burden to affirmatively demonstrate

6

the trial court's jurisdiction," which encompasses the burden of establishing a waiver of a governmental entity's immunity from suit. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). In determining whether the plaintiff has met that burden, we liberally construe the pleadings and look to the plaintiffs' intent. *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020). "When a defendant challenges jurisdiction, a court 'is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.'" *Swanson*, 590 S.W.3d at 550 (quoting *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555). This is true even when the jurisdictional issue intertwines with the merits of the case. *Id.*

We review pleas to the jurisdiction de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). This standard of review is especially appropriate when, as here, the material jurisdictional facts are undisputed and the analysis of the plea to the jurisdiction turns on a question of law regarding statutory construction. *Id.*; *see also Hegar v. Mahindra USA, Inc.*, No. 03-18-00126-CV, 2020 WL 962415, at *4 (Tex. App.—Austin Feb. 28, 2020, no pet.) (mem. op.). "When construing a statute, our primary objective is to give effect to the Legislature's intent," and "[w]e seek that intent first and foremost in the statutory text." *Colorado County v. Staff*, 510 S.W.3d 435, 444 (Tex. 2017) (quoting *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015) (cleaned up)). We look at the statute's plain and ordinary meaning, "and then consider the term's usage in other statutes, court decisions, and similar authorities." *EBS Sols., Inc. v. Hegar*, 601 S.W.3d 744, 749 (Tex. 2020) (quoting *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017)). "We turn to extrinsic sources only if

7

the statute is ambiguous or if applying the statute's plain meaning would produce an absurd result." *Id*. The statutory text is determinative when it is clear, and "we may not look beyond its language for assistance in determining legislative intent unless the statutory text is susceptible to more than one reasonable interpretation." *Staff*, 510 S.W.3d at 444.

The Texas Legislature has waived the State's sovereign immunity as to three types of tax challenges, including protests and refunds. TEX. TAX CODE ANN. §§ 112.051, .052, .151; *see EBS Sols.*, 601 S.W.3d at 750. However, the taxpayer must comply with the statutory requirements of each challenge in order to effectively invoke the waiver of sovereign immunity. *See In re Nestle USA, Inc.*, 359 S.W.3d 207, 208 (Tex. 2012) (orig. proceeding); *see also* TEX. GOV'T CODE ANN. § 311.034 ("Statutory prerequisites to a suit . . . are jurisdictional requirements in all suits against a governmental entity.").

## III.    ANALYSIS

In its plea to the jurisdiction, the State claimed that the waiver of immunity for appellants' suit after payment under protest was never triggered because it did not issue an "assessment" of appellants' SOB fees. *See.* TEX. TAX CODE ANN. § 112.052(d); *In re Nestle USA, Inc.*, 359 S.W.3d at 208; *see also* TEX. GOV'T CODE ANN. § 311.034.

Following this case's submission at oral argument, the State pointed us to a recently issued opinion by the Third Court of Appeals: *1st Global, Inc. v. Hegar*. No. 03-19-00740-CV, 2021 WL 5022390 (Tex. App.—Austin Oct. 29, 2021) (mem. op.).[5] In *1st*

---

[5] We abated this case to allow the parties to brief this Court on the impact, if any, of *1st Global, Inc. v. Hegar* on the underlying case. After both parties submitted their supplemental briefs, we reinstated the case.

8

*Global*, the court considered whether 1st Global's self-assessed franchise tax payment made in protest triggered § 112.151(a)'s waiver of immunity to sue for a refund. *Id.* at *2. The court, acknowledging that immunity may not be waived absent "clear and unambiguous language," determined that an "amount claimed by the state" under § 112.151(a) required "some sort of affirmative claim by the state for a specific amount." *Id.* at *3. The State argues that the same reasoning applies to appellants' "assessment" of its own SOB Fee.

In response, appellants note that the *1st Global* court postulated that "a statute might, by itself, represent an 'amount claimed by the state' if, for example, the [L]egislature enacted a law fixing the annual franchise tax for a named class of taxpayers at a specific amount." *Id.*[6] Appellants thus argue that, because the SOB Fee is "fixed" at $5 per person, the statute imposing that fee itself constitutes an "amount claimed by the state." The State responds that, while the rate at which the tax is calculated is fixed, the amount owed annually is variable and thus does not fall within *1st Global's* suggestion. For the reasons explained below, we agree with the State.

"Fixed," as typically used, means "not subject to change or fluctuation." *Fixed*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/fixed (last visited May 9, 2023). Appellants assert that Texas Business and Commerce Code

---

[6] The *1st Global* court's suggestion in this regard was dicta. *See 1st Global, Inc. v. Hegar*, No. 03-19-00740-CV, 2021 WL 5022390, at *3 (Tex. App.—Austin Oct. 29, 2021) (mem. op.). For purposes of our analysis, we assume but do not decide that the statement is judicial dicta and is thus controlling precedent. *See Edwards v. Kaye*, 9 S.W.3d 310, 314 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (noting that "judicial dictum," a statement "made very deliberately after mature consideration and for future guidance in the conduct of litigation," is "at least persuasive and should be followed unless found to be erroneous") (citing *Palestine Contractors, Inc. v. Perkins*, 386 S.W.2d 764, 773 (Tex. 1964)); *see also* TEX. R. APP. P. 41.3.

§ 102.052(a) "<u>does</u> '*fix the annual [SOB] tax for a named class of payers at a specific amount* ($5/patron).'" Appellants claim that, unlike the appellants in *1st Global*, they "did not utilize any subjective determination of the apportionment of their receipts attributable to services provided in Texas and they did not 'self-assess' their SOB [Fee] liability."

The court in *1st Global* identified an example of a fixed annual tax that may constitute an "amount claimed by the state" without more affirmative action: the former $10 annual franchise tax for all domestic corporations. *See 1st Global*, 2021 WL 5022390, at *3 n.1 (citing *In re Nestle USA, Inc.*, 387 S.W.3d 610, 612 (Tex. 2012) (orig. proceeding) ("Texas' first franchise tax, enacted in 1893, was $10 annually for 'each and every private domestic corporation heretofore chartered or that may be hereafter chartered under the laws of this State . . . .'")). Accordingly, if the taxpayer fell within the class (i.e. if it was a domestic corporation), then it owed $10 per year—no more, no less. Here, in contrast, the annual SOB Fee owed by appellants is not "fixed" at a specific period amount; rather; it varies based on the number of patrons received by the SOB. In other words, § 102.052(a) does not "fix the *annual* [SOB] tax for a named class of taxpayers at a specific amount." *See id.*; *see also* TEX. BUS. & COM. CODE ANN. § 102.052(a). Because the $5 per patron SOB Fee does not establish the annual tax due for each taxpayer, there has been no "affirmative claim by the state for a specific amount" necessary which would trigger a waiver of immunity under Chapter 112 of the tax code. *See 1st Global*, 2021 WL 5022390, at *3.

Appellants also contend that their case differs from *1st Global* because they are challenging the constitutionality of the SOB Fee. To the extent appellants argue that this

10

implicates a waiver of immunity, we note that the proper way to attack the constitutionality of a statute is through a declaratory judgment action. *See Rylander v. Caldwell*, 23 S.W.3d 132, 136 (Tex. App.—Austin 2000, no pet.) ("[I]t is . . . well recognized that declaratory relief is the proper remedy when challenging the constitutionality of a statute and that plaintiffs are not required to obtain the State's consent before suing for declaratory judgment."). Further, the "various arguments for why [a business] might succeed in a cause of action seeking a refund under [C]hapter 112 are not separate causes of action that implicate sovereign immunity but are instead the businesses' allegations as to why they are entitled to a full or partial tax refund." *Hegar v. Sacolo, Ltd.*, No. 03-19-00707-CV, 2020 WL 962399, at *2 (Tex. App.—Austin Feb. 28, 2020, no pet.) (mem. op.). Appellants' suit seeks a refund of their protest payment but does not request declaratory relief. Therefore, appellants did not allege facts establishing a waiver of immunity in this regard.

Appellants also urge us to adopt the reasoning from the dissent in *1st Global*. *See 1st Global*, 2021 WL 5022390 (Triana, J. dissenting). However, the rules of appellate procedure bind us to apply the controlling precedent of the court from which this case is transferred. *See* TEX. R. APP. P. 41.3. As such, we must apply the reasoning set out by the majority in *1st Global*. *See id.*

Accordingly, we conclude de novo that the appellants failed to comply with the plain language of § 112.051(a) and thus the State's sovereign immunity was not waived.[7]

---

[7] In light of this conclusion, we need not address the State's argument that appellants failed to comply with § 115.052(d) because there was no "assessment" of appellants' SOB Fee. *See* TEX. R. APP. P. 47.1.

*See* Tex. Tax Code Ann. § 112.051(a); *see also In re Nestle USA, Inc.*, 359 S.W.3d at 208.

## IV.    Conclusion

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Concurring Memorandum Opinion
By Chief Justice Contreras.

Delivered and filed on the
8th day of June, 2023.