ACCEPTED
03-15-00186-CV
5438907
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/27/2015 3:42:03 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00186-CV

# In the Court of Appeals
# for the Third Judicial District
# Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/27/2015 3:42:03 PM
JEFFREY D. KYLE
Clerk

GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS, AND KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS,
*Appellants,*

v.

STATEWIDE MATERIALS TRANSPORT, LTD.,
*Appellee.*

On Appeal from the
250th Judicial District Court of Travis County, Texas

## APPELLANTS' BRIEF

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney
General

OFFICE OF THE ATTORNEY
GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

SCOTT A. KELLER
Solicitor General

DOUGLAS D. GEYSER
Assistant Solicitor General
State Bar No. 24059817
*douglas.geyser@texasattorneygeneral.gov*

CHARLES K. ELDRED
Assistant Attorney General

COUNSEL FOR APPELLANTS

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

*Appellants (Defendants below)*
Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas

| *Lead Appellate Counsel* | *Additional Appellate and Trial Counsel* |
|---|---|
| Douglas D. Geyser | Charles K. Eldred |
| State Bar No. 24059817 | State Bar No. 00793681 |
| Assistant Solicitor General | Assistant Attorney General |
| OFFICE OF THE ATTORNEY GENERAL | OFFICE OF THE ATTORNEY GENERAL |
| P.O. Box 12548 (MC 059) | P.O. Box 12548 (MC 017-6) |
| Austin, Texas 78711-2548 | Austin, Texas 78711-2548 |
| Tel.: (512) 936-2540 | Tel.: (512) 936-6417 |
| Fax: (512) 474-2697 | Fax: (512) 477-2348 |
| *douglas.geyser@texasattorneygeneral.gov* | *charles.eldred@texasattorneygeneral.gov* |

*Appellee (Plaintiff below)*
    Statewide Materials Transport, Ltd.

*Appellate and Trial Counsel*
Amanda G. Taylor
James F. Martens
Danielle V. Ahlrich
MARTENS, TODD, LEONARD, TAYLOR & AHLRICH
301 Congress Ave., Suite 1950
Austin, Texas 78701
Tel.: (512) 542-9898
*ataylor@textaxlaw.com*

i

# TABLE OF CONTENTS

Identity of Parties and Counsel ...................................................................i

Table of Contents .....................................................................................ii

Index of Authorities...............................................................................iv

Statement of the Case...........................................................................vii

Statement Regarding Oral Argument ......................................................viii

Issue Presented ......................................................................................ix

Statement of Facts ...................................................................................2

Summary of Argument..............................................................................5

Argument..................................................................................................7

    I.     Submitting The Proper Protest Payment Is A Prerequisite To Invoking The Tax Code's Waiver Of Immunity...........................................................................7

    II.    A Taxpayer May Not Satisfy The Protest-Payment Requirement By Self-Assessing The Amount Of Tax Owed. ......................................................................9

        A.    The Text And Purpose Of Section 112.051(a) Show That The State Must Take Some Discrete Action To Establish The Amount Owed...................................9

        B.    The Context Of The Protest-Suit Provisions Among Chapter 112's Other Taxpayer Remedies Confirms The State Defendants' Interpretation Of Section 112.051(a). ....................................13

    III.   Statewide's Arguments To The Contrary Are Meritless......17

        A.    Statewide's Textual Analysis Misunderstands The Statutory Scheme As A Whole...................................18

ii

B. *Nestle II* Did Not Address The Question Presented By This Appeal. ........................................................... 20

C. Section 112.052(b) Retains Meaning Under The State's Interpretation ................................................. 23

Prayer ...................................................................................... 25

Certificate of Service .............................................................. 26

Certificate of Compliance ....................................................... 26

Appendix

iii

# INDEX OF AUTHORITIES

**Cases**

*Ariz. Christian Sch. Tuition Org. v. Winn,*
131 S. Ct. 1436 (2011) ................................................................22

*Austin Nat'l Bank of Austin v. Sheppard,*
71 S.W.2d 242 (Tex. 1934).........................................................11

*Berry v. Tex. Democratic Party,*
449 S.W.3d 633 (Tex. App.—Austin 2014, no pet.) ........................8

*Dallas Cnty. Cmty. Coll. Dist. v. Bolton,*
185 S.W.3d 868 (Tex. 2005)................................................... 11, 13

*Gantt v. Gantt,*
208 S.W.3d 27 (Tex. App.—Houston [14th Dist.]
2006, pet. denied) .........................................................................22

*In re Allcat Claims Serv., L.P.,*
356 S.W.3d 455 (Tex. 2011)........................................................22

*In re Nestle USA, Inc.,*
359 S.W.3d 207 (Tex. 2012)............................ 7, 8, 9, 11, 12, 15, 21

*In re Nestle USA, Inc.,*
387 S.W.3d 610 (Tex. 2012)......................................... 7, 20, 21, 22

*McLane Co., Inc. v. Strayhorn,*
148 S.W.3d 644 (Tex. App.—Austin 2004, pet. denied)............19-20

*Nu-Way Oil Co. v. Bullock,*
546 S.W.2d 336 (Tex. Civ. App.—Austin 1976, no writ) ...............16

*Prairie View A & M Univ. v. Chatha,*
381 S.W.3d 500 (Tex. 2012).........................................................8

*Reata Constr. Corp. v. City of Dallas,*
197 S.W.3d 371 (Tex. 2006).........................................................8

*Sanadco Inc. v. Office of the Comptroller of Pub. Accounts of the State of Tex.*,
No. 03-11-00462-CV, 2015 WL 1478200
(Tex. App.—Austin Mar. 25, 2015, no pet. h.)
(mem. op.) ...................................................................... 9, 12, 15

*Strayhorn v. Raytheon E-Sys., Inc.*,
101 S.W.3d 558 (Tex. App.—Austin 2003, pet. denied) ................. 15

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,
852 S.W.2d 440 (Tex. 1993) ........................................................ 8

*Wichita Falls State Hosp. v. Taylor*,
106 S.W.3d 692 (Tex. 2003) ........................................................ 8

**Statutes**

TEX. GOV'T CODE § 311.034 ..................................................... 8-9

TEX. TAX CODE § 111.017(a) ...................................................... 12

TEX. TAX CODE § 111.104 ........................................................... 16

TEX. TAX CODE § 111.104(a) ...................................................... 14

TEX. TAX CODE § 111.104(b) ...................................................... 14

TEX. TAX CODE § 111.105 ........................................................... 16

TEX. TAX CODE § 111.105(c) ...................................................... 14

TEX. TAX CODE § 112.051(a) ............................................... *passim*

TEX. TAX CODE § 112.051(b) ................................................... 3, 16

TEX. TAX CODE § 112.052(a) ........................................... vii, ix, 2

TEX. TAX CODE § 112.052(b) ................................................. 7, 23

TEX. TAX CODE § 112.053(a) ...................................................... 18

TEX. TAX CODE § 112.101 ...................................................................14

TEX. TAX CODE § 112.101(a) ...........................................................14

TEX. TAX CODE § 112.1011 ..............................................................14

TEX. TAX CODE § 112.1011(a) ........................................................15

TEX. TAX CODE § 112.1011(a)(2) ...................................................17

TEX. TAX CODE § 112.151(a) ..................................................... 14, 16

TEX. TAX CODE § 152.041(a) ...........................................................18

TEX. TAX CODE § 154.046(a) ...........................................................19

TEX. TAX CODE § 160.041(a) ...........................................................19

TEX. TAX CODE § 171.1011(f) .............................................................3

TEX. TAX CODE § 171.202(c) .....................................................3, 23

## Other Authorities

Act of May 2, 2006, 79th Leg., 3d C.S., ch. 1, § 24, 2006 Tex.
     Gen. Laws 1 ...............................................................................21

BLACK'S LAW DICTIONARY (9th ed. 2009) .................................................9

*Webster's Ninth New Collegiate Dictionary* (1983) ..............................9-10

## STATEMENT OF THE CASE

*Nature of the Case*: Statewide Materials Transport, Ltd. ("Statewide") filed a tax-protest suit under section 112.052 of the Tax Code. CR.3-11.[1] This interlocutory appeal arises from the denial of the State's plea to the jurisdiction, which asserted that Statewide had not fulfilled all the statutory prerequisites to suit. CR.37-44; *see* TEX. TAX CODE §§ 112.051(a), .052(a)

*Trial Court*: The Honorable Stephen Yelenosky
250th District Court, Travis County, Texas

*Course of Proceedings*: Statewide sued Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas (together, the "State Defendants"), seeking recovery of franchise taxes paid under protest. CR.3-11. The State Defendants filed a motion to dismiss for lack of jurisdiction. CR.37-44.

*Trial Court Disposition*: The trial court denied the State Defendants' motion. CR.166 (App. A).

---

[1] Citations of the Clerk's Record are formatted "CR.[page]". References to the appendix to this brief are formatted "App. [tab]".

## STATEMENT REGARDING ORAL ARGUMENT

The question of statutory interpretation presented by this appeal—whether a taxpayer may invoke a court's jurisdiction under the tax-protest statutes merely by self-assessing the amount of tax it believes is due—is an issue of first impression. Moreover, the issue is an important one. If Statewide is correct, then a taxpayer can proceed directly to court instead of first seeking an administrative resolution or awaiting a demand by the Comptroller or other public official. That outcome would unnecessarily burden both the judiciary and the State, which will have to expend resources defending against these suits. The Legislature sensibly drafted the tax-protest prerequisites to avoid those consequences.

# ISSUE PRESENTED

Before filing a tax-protest suit, a taxpayer must first submit to the Comptroller a protest payment in "the amount [of tax] claimed by the state." TEX. TAX CODE § 112.051(a) (App. B); *see id.* § 112.052(a) (App. C) (allowing suit to recover franchise tax "if the person has first paid the tax under protest as required by Section 112.051 of this code"). The question presented is whether "the amount claimed by the state" exists before the State makes a demand on the taxpayer (via an audit or another method) for a particular amount or, by contrast, whether the taxpayer may predict the amount that the State will claim by self-assessing.

No. 03-15-00186-CV

# In the Court of Appeals
# for the Third Judicial District
# Austin, Texas

GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF
TEXAS, AND KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS,
*Appellants*,

v.

STATEWIDE MATERIALS TRANSPORT, LTD.,
*Appellee.*

On Appeal from the
250th Judicial District Court of Travis County, Texas

**APPELLANTS' BRIEF**

TO THE HONORABLE THIRD COURT OF APPEALS:

Chapter 112 of the Tax Code provides three, exclusive means for taxpayers to obtain tax relief via the judiciary. As waivers of sovereign immunity, those methods depend on strict compliance with statutory prerequisites tailored to each mechanism. The tax-protest provisions, which Statewide attempts to invoke here, required Statewide to pay "the amount claimed by the State." But the State had claimed no amount at all; it had never assessed Statewide's 2012 franchise-tax liability at the

time Statewide made its protest payment. If Statewide wanted to sue the State based on its own prediction of the amount the State *would* claim, Statewide should have either paid that amount and then sought a tax refund, or attempted to obtain a tax injunction. What Statewide could not do was disregard the prerequisite for bringing a tax-protest suit and go to court anyway, effectively attempting to mash up the various Chapter 112 procedures instead of properly pursuing one of them. Because Statewide failed to satisfy the jurisdictional prerequisite for a protest suit, the trial court should have granted the State Defendants' plea to the jurisdiction.

## STATEMENT OF FACTS

Chapter 112 waives the State's immunity for three types of lawsuits to obtain tax relief. Statewide seeks to invoke the protest-suit provisions, under which a "person may bring suit against the state to recover an occupation, excise, gross receipts, franchise, license, or privilege tax or fee required to be paid to the state if the person has first paid the tax under protest as required by Section 112.051 of this code." TEX. TAX CODE § 112.052(a). In turn, section 112.051 requires that "the person shall pay the amount claimed by the state" and "must submit with the payment a

2

protest." *Id.* § 112.051(a). The protest "must state fully and in detail each reason for recovering the payment." *Id.* § 112.051(b). The written protest and accompanying payment constitute jurisdictional prerequisites to suit.

Statewide is a transportation broker (primarily for construction materials). CR.5. Entities contract with Statewide to arrange for transportation, and Statewide in turn contracts with motor carriers to provide transportation. *Id.* Statewide's customers pay Statewide directly. *Id.* Statewide keeps a portion of those payments and remits payment to the carriers. *Id.* Statewide filed suit under section 112.052 to reclaim a portion of its franchise taxes for the year 2012.

Statewide asserts that its payments to the carriers should not be included in its total revenue for purposes of calculating its franchise taxes. CR.6-9. Its primary argument is that those payments are "flow-through funds" excluded from a proper calculation of revenue. CR.6-7 (citing TEX. TAX CODE § 171.1011(f)). Statewide thus paid $17,976—the amount it believed was appropriate under its reading of the franchise-tax provisions—when it asked for an extension on filing its franchise-tax annual report. CR.6; *see* TEX. TAX CODE § 171.202(c) (allowing taxpayer

3

to request an extension if taxpayer pays, along with request, "not less than 90 percent of the amount of tax reported as due on the report filed on or before November 15 [i.e., the extended deadline] or "100 percent of the tax reported as due for the previous calendar year"). When it later filed its report by the extended deadline, it also paid an additional $144,264 purportedly under protest, representing the amount it believed would be due if the flow-through funds exclusion were denied. CR.53. Shortly thereafter, the Comptroller determined that Statewide's $17,976 was insufficient to satisfy section 171.202(c)'s extension requirements, and accordingly assessed penalties and interest. CR.6.

Before Statewide made its $144,264 protest payment, however, the State had not assessed Statewide's 2012 franchise taxes. *See* CR.45-46 (Comptroller auditor affidavit). Statewide instead based that payment on its own determination of how it thought the Comptroller *would* assess those taxes. Statewide's prediction allegedly rests on the Comptroller's "repeated public announcements of its position" about the flow-through funds exclusion, the Comptroller's position in other lawsuits not involving Statewide but allegedly addressing "the same issue regarding

4

similarly-situated taxpayers," and the Comptroller's denial of Statewide's 2008 refund claim regarding the same exclusion.[2] CR.58-59.

Believing that it had satisfied section 112.052's jurisdictional prerequisites, Statewide filed its protest suit. The State Defendants filed a general denial and a motion to dismiss for lack of jurisdiction. The trial court denied the State Defendants' motion, and the State Defendants timely appealed.

## SUMMARY OF ARGUMENT

To validly invoke Chapter 112's waiver of sovereign immunity for a tax-protest suit, the taxpayer must "pay the amount claimed by the state." TEX. TAX CODE § 112.051(a). That requirement constitutes a jurisdictional prerequisite to suit and must be strictly construed.

The phrase "the amount claimed by the state" necessarily entails that the Comptroller or other public official concretely demand a specific amount of tax. The taxpayer thus cannot satisfy that prerequisite by

---

[2] It is unclear from the record whether the 2008 denial was based on a substantive evaluation of the refund claim or rather on Statewide's failure to provide necessary documentation. *See* CR.86 (letter from auditor denying refund because "[t]he consultant has not provided information/documentation to support franchise tax fiduciary funds mandate"); CR.74 (e-mail exchange between auditor and Statewide's counsel in which auditor explains that she issued a letter that "stated to produce requested documents by July 16th, 2012[,] and no documentation has been provided. With that in mind, I am denying the refund request.").

5

unilaterally predicting what the State *would* demand. Statewide's construction is untenable because self-assessment does not countenance any action by the State.

Statewide's interpretation—that a satisfactory protest payment should be evaluated on a case-by-case basis—would also conflict with the nature of an immunity waiver. The case-by-case analysis that Statewide favors would entail significant litigation costs for the State. Yet the very purpose of sovereign immunity from suit is to protect the State from expending those resources. And section 112.051(a) sensibly requires the State to defend tax-protest lawsuits only if the State has made a demand for a particular amount, so that there is no question about the amount protested and subject to dispute in court.

The other two types of tax lawsuits—a suit for a tax refund and a suit for an injunction—confirm the State Defendants' view of the matter. The refund mechanism shows that the Legislature considered that a taxpayer might self-assess yet dispute the taxes owed; and that mechanism therefore includes administrative-exhaustion requirements. And the injunction mechanism shows that the Legislature considered that a taxpayer might wish to preempt a demand for taxes. Statewide

cannot create what amounts to a fourth way into court by self-assessing and bringing suit.

Statewide's arguments to the contrary are meritless. First, it argues that the Legislature could have "written the statute to say 'the amount claimed by the Comptroller in an audit assessment,'" CR.57, but that assertion ignores the fact that the statutory scheme contemplates that a public official other than the Comptroller might make a concrete demand other than through an audit. Second, it argues that the Supreme Court's *Nestle* cases already decided the question presented, *see In re Nestle USA, Inc.*, 387 S.W.3d 610 (Tex. 2012) (*Nestle II*); *In re Nestle USA, Inc.*, 359 S.W.3d 207 (Tex. 2012) (*Nestle I*), but to the contrary these cases never even considered this issue. Third, Statewide contends that the State Defendants' interpretation renders part of section 112.052(b) superfluous, but that contention ignores a scenario in which section 112.052(b) applies.

## ARGUMENT

## I. SUBMITTING THE PROPER PROTEST PAYMENT IS A PREREQUISITE TO INVOKING THE TAX CODE'S WAIVER OF IMMUNITY.

"The state generally enjoys immunity from suit and liability unless immunity has been clearly and unambiguously waived by legislative

7

enactment or constitutional provision." *Berry v. Tex. Democratic Party*, 449 S.W.3d 633, 639 (Tex. App.—Austin 2014, no pet.). Immunity from suit protects the State from expending taxpayer money on defending lawsuits "rather than using those resources for their intended purposes." *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006). The Supreme Court has "repeatedly affirmed that any purported statutory waiver of sovereign immunity should be strictly construed in favor of retention of immunity." *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 513 (Tex. 2012); *see Berry*, 449 S.W.3d at 640 ("[W]e are required to strictly construe statutes waiving sovereign immunity."). Accordingly, any ambiguity in a statute must be interpreted to retain immunity. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003). The plaintiff bears the burden to establish jurisdiction. *See, e.g.*, *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

The Tax Code's protest-suit provision constitutes a waiver of sovereign immunity. *See, e.g.*, *Nestle I*, 359 S.W.3d at 212. That waiver is conditioned on taking particular actions—including "pay[ing] the amount claimed by the state," TEX. TAX CODE § 112.051(a)—that represent jurisdictional prerequisites to invoking the waiver, *see* TEX. GOV'T CODE

8

§ 311.034 ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."); *Nestle I*, 359 S.W.3d at 208, 212; *Sanadco Inc. v. Office of the Comptroller of Pub. Accounts of the State of Tex.*, No. 03-11-00462-CV, 2015 WL 1478200, at *5 (Tex. App.—Austin Mar. 25, 2015, no pet. h.) (mem. op.). The protest-payment requirement thus must be strictly construed to preserve immunity.

## II. A TAXPAYER MAY NOT SATISFY THE PROTEST-PAYMENT REQUIREMENT BY SELF-ASSESSING THE AMOUNT OF TAX OWED.

### A. The Text And Purpose Of Section 112.051(a) Show That The State Must Take Some Discrete Action To Establish The Amount Owed.

**1.** To invoke the statutory waiver, the taxpayer must pay "the amount claimed by the state." TEX. TAX CODE § 112.051(a). That language indicates that the State must take some concrete action to establish a definitive "amount" owed. For instance, Black's defines "claim" as "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional" and "[a] demand for money, property, or a legal remedy to which one asserts a right." BLACK'S LAW DICTIONARY 281-82 (9th ed. 2009); *see also Webster's Ninth New Collegiate Dictionary* 244 (1983) (defining "claim" as "to ask for esp. as a

9

right" and "to call for"). That is, for an "amount" "claimed" by the State even to exist, the State must demand or call for a particular amount. And because it is the State that must assert that right or make the demand (i.e., the amount claimed *by the State*), the taxpayer cannot self-assess based merely on its prediction of the amount the State might claim.

**2.** The fact that section 112.051(a) is part of an immunity waiver supports the State Defendants' interpretation. First, to the extent section 112.051(a)'s language is ambiguous, it must be construed to preserve immunity. *See supra* Part I.

Second, if a self-assessment sufficed to invoke the waiver, the courts' jurisdiction over claims against the Comptroller would significantly expand, thereby increasing the amount of resources the State must expend defending against these lawsuits. And the State would have to burn up these resources before it's even clear that the taxpayer does indeed owe the taxes being protested.

That problem is exacerbated by Statewide's suggested construction of the statute. Evidently conceding that self-assessment may not always suffice, Statewide argues that the question "whether a 'claim' has been made [by the State] in satisfaction of Section 112.051 necessarily

10

presents a case-by-case determination." CR.58. But the "circumstances" that Statewide says inform that determination may entail significant litigation costs, such as examining the Comptroller's "public announcements," engaging in discovery of the taxpayer's prior-year audits, and evaluating the Comptroller's position in other lawsuits. *See* CR.58-59. And the parties of course might dispute the import and meaning of those factors. That kind of elaborate investigation and debate is antithetical to a proper understanding of an immunity waiver.

**3.** Self-assessment also would distort the tradeoff offered to the taxpayer by the protest-suit waiver. At common law, a person who voluntarily paid a tax "ha[d] no claim for its repayment." *Austin Nat'l Bank of Austin v. Sheppard*, 71 S.W.2d 242, 245 (Tex. 1934). That "rule secure[d] taxing authorities in the orderly conduct of their financial affairs." *Dallas Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 876 (Tex. 2005). The taxpayer could recover overpayment of taxes "only with legislative permission" or by claiming payment under "duress" (which differs from payment under protest). *Nestle I*, 359 S.W.3d at 210. Declaratory and injunctive relief was also available under limited circumstances. *Id.*

11

Chapter 112 represents the culmination of legislative efforts to reform those limited tax remedies while preserving the functionality of the State's tax-administration scheme. *See id.* at 210-11. In exchange for submitting the amount of taxes claimed by the State along with the written protest, the protest mechanism allows a taxpayer to obtain a judicial determination of the State's claim without showing duress and while staving off enforcement proceedings. *See, e.g.*, TEX. TAX CODE § 111.017(a) (providing for seizure and sale of property). And for the State's benefit, the protest payment aids the State's budgeting process by assuring the State that the taxpayer is good for the amount the taxpayer is protesting, thereby removing any concern that "the State's 'entire tax collection scheme' [will] be disrupted" as a result of taxpayers delaying (and potentially defaulting on) taxes. *Sanadco*, 2015 WL 1478200, at *5 (quoting *Nestle I*, 359 S.W.3d at 211).

But if the taxpayer may merely self-assess, there is no guarantee that the protest payment would meet the goal of the protest-suit statute; rather, the taxpayer may have finagled its way into court by paying (substantially) less than the State would have demanded. That result

would present a "threat[] to [the] state's financial security that can arise from unpredictable revenue shortfalls." *Dallas Cnty.*, 185 S.W.3d at 877.

It is no answer that the trial court can decide whether the payment happens to match the amount that the State would have claimed. Indeed, that determination would require the court effectively to decide the very issue that is the subject of the suit: whether the protested taxes are owed. There is thus good reason that the Legislature conditioned the immunity waiver on paying the amount that the State has concretely and specifically demanded. Only with that exact demand can the State be certain its tax-collection scheme remains undisturbed. The protest-suit mechanism does not hand over the keys to the courthouse doors whenever the taxpayer is willing to go out-of-pocket whatever amount of money that it has unilaterally determined is appropriate.

B. **The Context Of The Protest-Suit Provisions Among Chapter 112's Other Taxpayer Remedies Confirms The State Defendants' Interpretation Of Section 112.051(a).**

In addition to a protest suit, Chapter 112 provides two other methods to obtain relief from taxation. Viewing these three methods together reveals additional flaws in Statewide's argument and confirms the State Defendants' interpretation of section 112.051(a).

The second avenue for relief is a tax-refund suit. If a taxpayer pays taxes that it believes were unlawfully or erroneously collected, the taxpayer may file a tax-refund claim with the Comptroller. TEX. TAX CODE § 111.104(a), (b). If dissatisfied with the Comptroller's determination of the refund claim, the taxpayer may ask for rehearing. *Id.* § 111.105(c). Only after the rehearing has been denied may the taxpayer bring suit to recover the tax that is the subject of the refund claim. *Id.* § 112.151(a).

The third option is to seek to enjoin the collection of a tax. *See id.* §§ 112.101, .1011. The taxpayer must first file with the Attorney General "a statement of the grounds on which the order or injunction is sought," and either (A) pay all the taxes "then due by the applicant to the state" or (B) post a bond equal to twice the amount of taxes "then due and that may reasonably be expected to become due during the period the order or injunction is in effect." *Id.* § 112.101(a). The court may not issue a restraining order or injunction unless the taxpayer demonstrates that irreparable injury will result without the relief, no other adequate remedy at law exists, and the taxpayer is reasonably likely to prevail on

14

the merits. *Id.* § 112.1011(a). Typically the availability of a protest or refund suit will constitute an adequate legal remedy.

Aside from these three mechanisms, "Chapter 112 allows no other actions to challenge or seek refunds of the taxes to which it applies." *Nestle I*, 359 S.W.3d at 209; *see Sanadco*, 2015 WL 1478200, at *5 ("*Nestle* explicitly prohibits any attempt at relief from assessed state taxes on *any* basis except as provided in the chapter.").[3] Crucially, "[t]he rights and restrictions of chapter 112 are part of the State's entire tax collection scheme." *Nestle I*, 359 S.W.3d at 211 (citation and internal quotation marks omitted). Statewide's interpretation of section 112.051(a) would minimize the efficacy of Chapter 112's procedures in at least two ways.

First, Statewide's position essentially requests a fourth way into court, amounting to a declaratory-judgment action to secure a judicial

---

[3] This Court has held that a taxpayer also may seek a declaratory judgment outside Chapter 112's procedures if the taxpayer "request[s] a statutory interpretation that [goes] beyond its request for a tax refund," *Strayhorn v. Raytheon E-Sys., Inc.*, 101 S.W.3d 558, 572 (Tex. App.—Austin 2003, pet. denied), and only if the suit seeks a "declaration[] of the validity or constitutionality of rules and statutes and their threatened enforcement prior to finality of an agency determination," *Sanadco*, 2015 WL 1478200 at *6 n.9. The State Defendants respectfully submit that Chapter 112 provides the exclusive methods to obtain *any* type of tax relief, but in any event Statewide has not sought a freestanding declaratory judgment (regarding the validity or constitutionality of a rule or statute or otherwise), nor does its claim go "beyond" a request to recover taxes. And relief through Chapter 112 is unavailable because, as discussed above, there has been no "tax assessment." *Id.*

interpretation of any Tax Code section in order to obtain tax relief. Although the taxpayer would still have to "state fully and in detail each reason for recovering the payment," TEX. TAX CODE § 112.051(b), as discussed above, paying the full amount demanded by the State also forms a crucial basis for a tax-protest suit, *see supra* at 11-13; *Nu-Way Oil Co. v. Bullock*, 546 S.W.2d 336, 341 (Tex. Civ. App.—Austin 1976, no writ) ("Payment of the taxes, accompanied by such written protest, is requisite on the part of the taxpayer to provide basis for later suit." (internal quotation marks omitted)).

Second, Chapter 112 already provides a method for taxpayers to self-assess taxes, pay those taxes, and then try to recover them. That is the point of a refund suit. The important distinction—especially in light of sovereign immunity's purpose of protecting the State from unnecessarily expending resources in litigation—is that one prerequisite for bringing a tax-refund lawsuit is the exhaustion of administrative remedies with the Comptroller. *See* TEX. TAX CODE §§ 112.151(a), 111.104, .105. That represented the correct way for Statewide to hash out potentially conflicting interpretations of the Tax Code instead of attempting an end-run around an administrative remedy.

The propriety of that tactic is reinforced by the tax-injunction provisions. The Legislature contemplated the possibility that a taxpayer might be convinced that the State will demand—erroneously, in the taxpayer's view—a certain amount of taxes. Chapter 112 thus allows for tax-injunction suits, but only in the limited situations where (among other restrictions) "no other adequate remedy is available to the applicant." *Id.* § 112.1011(a)(2).

The fundamental problem with Statewide's argument is that it is trying to squeeze itself into the protest-suit box when it simply will not fit. Statewide should have (1) paid its predicted taxes then gone through the refund process; (2) paid what it believes should be owed under what it claims is the correct calculation of the franchise tax and risked an audit; or (3) tried to satisfy the tax-injunction requirements. A tax-protest suit, however, was not a permissible recourse in the absence of a concrete demand by the State.

III. **STATEWIDE'S ARGUMENTS TO THE CONTRARY ARE MERITLESS.**

In the trial court, Statewide made three arguments worth addressing here: that section 112.051(a)'s text contemplates self-assessment, that *Nestle II* resolved this issue, and that the State

17

Defendants' interpretation would render section 112.052(b) surplusage. All are mistaken.

### A. Statewide's Textual Analysis Misunderstands The Statutory Scheme As A Whole.

In the trial court, Statewide emphasized two aspects of the statute to support its argument. It misconceives both. First, Statewide notes that section 112.051(a) refers to the amount claimed by "the state," not by "the Comptroller," suggesting that the State "claimed" the amount by enacting the franchise-tax statutes. CR.57 ("[T]he term 'state' encompasses more than 'the Comptroller.'"); CR.65 ("The claim may arise from the Legislature alone . . . .").

But the Legislature's choice of language merely reflects the fact that a public official other than the Comptroller might be charged with collecting the tax. Section 112.051(a) itself reveals as much by referencing "the public official charged with the duty of collecting the tax or fee." TEX. TAX CODE § 112.051(a); *see also id.* § 112.053(a) ("A suit authorized by this subchapter must be brought against the public official charged with the duty of collecting the tax or fee, the comptroller, and the attorney general."); *cf., e.g., id.* § 152.041(a) ("The tax assessor-collector of the county in which an application for registration or for a

Texas certificate of title is made shall collect taxes imposed by this chapter, subject to Section 152.0412, unless another person is required by this chapter to collect the taxes."); *id.* § 160.041(a) ("The [Parks and Wildlife] [D]epartment, each agent of the department, and each tax assessor-collector shall collect the taxes imposed by this chapter."). It thus would have been inaccurate and underinclusive for the statute to read "the amount claimed by the Comptroller," *cf.* CR.57, because another state actor might make the demand.

Second, Statewide contended that the Legislature could have appended the phrase "in an audit assessment" to the phrase "the amount claimed by the state." CR.57. This argument suffers from the same flaw as Statewide's point about using "the state" versus "the Comptroller": Statewide's hypothetical alternative phrasing again fails to appreciate other parts of the statutory scheme because the State can "claim" an amount by making an express demand other than through an audit. *See, e.g.,* TEX. TAX CODE § 154.046(a) ("The comptroller shall send an original invoice along with any stamps shipped to a distributor."); *McLane Co., Inc. v. Strayhorn,* 148 S.W.3d 644, 648, 651-52 (Tex. App.—Austin 2004, pet. denied) (explaining that taxpayer paid under protest invoices for

19

stamps regarding cigarette taxes, but dismissing lawsuit because it did "not protest the stamp tax itself, but rather the Comptroller's terms under which a distributor may obtain stamps without prepayment or [Cigarette Recovery Tax] Fund participation").

In sum, the reason that the Legislature did not "writ[e] the statute to say 'the amount claimed by the Comptroller in an audit assessment,'" CR.57, is that the tax-protest provisions cover a wide range of "tax[es] or fee[s] imposed by this title or collected by the comptroller under any law," TEX. TAX CODE § 112.051(a), and thus had to be drafted more comprehensively. But that relatively broad phrasing does not negate the requirement that, before a taxpayer can force the State to defend itself in court, there must be some express demand or assessment by the State for a definite amount.

### B. *Nestle II* Did Not Address The Question Presented By This Appeal.

Statewide also argued that *Nestle II* "held that the taxpayer's self-assessment and payment of its original tax bill under protest satisfied Section 112.051." CR.56-57 (citing *Nestle II*, 387 S.W.3d at 617). The Supreme Court held no such thing.

20

The *Nestle* cases involved a challenge to the constitutionality of the franchise tax. *See Nestle I*, 359 S.W.3d at 208; *Nestle II*, 387 S.W.3d at 612. Nestle sought to invoke the Supreme Court's original jurisdiction under section 24 of the 2006 act that overhauled the franchise tax. *See Nestle I*, 359 S.W.3d at 209-10 (citing Act of May 2, 2006, 79th Leg., 3d C.S., ch. 1, § 24, 2006 Tex. Gen. Laws 1, 40). Section 24 vested the Supreme Court with "exclusive and original jurisdiction over a challenge to the constitutionality of [the 2006 act] or any part of [that act]." *Id.* at 209-10 & n.26. Nestle thus argued that section 24 provided a method to obtain tax relief in the courts "independent of Chapter 112." *Id.* at 210. In *Nestle I*, the Court rejected that argument, holding that Nestle's failure to comply with any of Chapter 112's prerequisites to suit deprived the Court of jurisdiction. *See id.* at 208; *see also id.* at 211 ("A section 24 action brought originally in this Court, free of chapter 112's restrictions, would severely disrupt that scheme.").

After *Nestle I* was decided, "Nestle then paid the [taxes] due for 2012 under protest and re-filed its challenge." *Nestle II*, 387 S.W.3d at 616. But *Nestle II*'s jurisdictional discussion nowhere examined the manner of compliance with the statutory prerequisites for a protest suit.

Rather, the Court considered only whether Nestle's challenge properly invoked the Court's original jurisdiction under section 24. As the Court characterized the jurisdictional question, section 24's "legislative grant of 'jurisdiction to consider [a] facial challenge to the . . . constitutionality' of the franchise tax was valid but did not extend to 'challenges to how the Comptroller assesses, enforces, or collects the franchise tax' in individual situations." *Id.* at 617 & n.75 (alterations in original) (quoting *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 463, 470-71 (Tex. 2011)). Nestle's challenges fell into the former category and thus could be addressed on their merits. *Id.* That conclusion was the sole basis of the Court's holding that it "clearly ha[d] jurisdiction to consider all Nestle's claims." *Id.* Statewide's reliance on that holding therefore ignores its context. *See* CR.56-57.[4]

---

[4] That the Supreme Court found it had jurisdiction does not mean it considered and rejected every potential jurisdictional obstacle, and *Nestle II* is therefore not binding for the question presented here. *See, e.g.*, *Gantt v. Gantt*, 208 S.W.3d 27, 30 n.4 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("[I]n deciding its jurisdiction, a court is not bound by a prior exercise of jurisdiction where it was not questioned, but was passed *sub silentio*."); *Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1448-49 (2011) ("When a potential jurisdictional defect is neither noted nor discussed in a federal decision, the decision does not stand for the proposition that no defect existed. . . . The Court would risk error if it relied on assumptions that have gone unstated and unexamined.").

## C.	Section 112.052(b) Retains Meaning Under The State's Interpretation.

Finally, Statewide argued that if section 112.051(a) cannot be satisfied through self-assessment, then part of section 112.052(b), which sets the deadlines for filing a protest suit, becomes superfluous. Statewide ignores a scenario in which section 112.052(b) operates.

Section 112.052(b) generally requires a taxpayer to file its protest suit within 90 days of making the protest payment. *See* TEX. TAX CODE § 112.052(b). But it creates an exception for a taxpayer owing the franchise tax who has obtained an extension to file its franchise-tax annual report under section 171.202(c). Section 171.202 permits a taxpayer to obtain an annual-report extension to November 15 if, by May 15, it requests the extension and pays at least "90 percent of the amount of tax reported as due on the report filed on or before November 15" or "100 percent of the tax reported as due for the previous calendar year on the report due in the previous calendar year." *Id.* § 171.202(c). If the taxpayer satisfies that requirement, "the protest required by Section 112.051 may be filed with the report [i.e., by November 15] to cover the entire amount of tax paid for the period"; the taxpayer then has 90 days from that point to file suit. *Id.* § 112.052(b). Statewide contends that if a

23

taxpayer may not self-assess, then it can never avail itself of the extended deadline for protest payments under section 112.052(b).

Statewide's argument fails to account for the six-month period between the taxpayer's request for the extension (May 15) and the filing of the report that triggers the protest-suit deadline (November 15). When the taxpayer makes the request, the Comptroller might determine that the initial payment submitted along with the request is wrong and that the taxpayer owes more. That demand would then constitute an "amount claimed by the state," TEX. TAX CODE § 112.051(a), which the taxpayer could protest using the extended protest-suit deadline in section 112.052(b). Extension-seeking taxpayers thus may use sections 112.051(a) and 112.052(b) consistent with the State Defendants' interpretation of the phrase "amount claimed by the state."

## PRAYER

The Court should reverse the judgment of the district court and render judgment dismissing the case for want of jurisdiction.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

SCOTT A. KELLER
Solicitor General

/s/ Douglas D. Geyser
DOUGLAS D. GEYSER
Assistant Solicitor General
State Bar No. 24059817

CHARLES K. ELDRED
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-2540
Fax: (512) 474-2697
*douglas.geyser@texasattorneygeneral.gov*

COUNSEL FOR APPELLANTS

25

**CERTIFICATE OF SERVICE**

On May 27, 2015, the foregoing brief was served via File &

ServeXpress and e-mail on:

Amanda G. Taylor
James F. Martens
Danielle V. Ahlrich
MARTENS, TODD, LEONARD, TAYLOR & AHLRICH
301 Congress Ave., Suite 1950
Austin, Texas 78701
Tel.: (512) 542-9898
ataylor@textaxlaw.com

    *Counsel for Appellee*

         /s/  Douglas D. Geyser
         Douglas D. Geyser

**CERTIFICATE OF COMPLIANCE**

In compliance with Texas Rule of Appellate Procedure 9.4(i)(2), this

brief contains 4,826 words, excluding the portions of the brief exempted

by Rule 9.4(i)(1).

         /s/  Douglas D. Geyser
         Douglas D. Geyser

# Appendix

# TABLE OF CONTENTS

Order Denying Defendants' Motion to Dismiss (CR.166) ........................ A

TEX. TAX CODE § 112.051(a) ..................................................................... B

TEX. TAX CODE § 112.052(a) ..................................................................... C



Filed in The District Court
of Travis County, Texas

MAR 09 2015

At_____10:39_____M.
Velva L. Price, District Clerk

CAUSE NO. D-1-GN-12-003920

| | | |
|---|---|---|
| STATEWIDE MATERIALS TRANSPORT, LTD., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | |
| | § | TRAVIS COUNTY, TEXAS |
| GLENN HEGAR, | § | |
| COMPTROLLER OF PUBLIC ACCOUNTS | § | |
| OF THE STATE OF TEXAS; | § | |
| AND KEN PAXTON, ATTORNEY | § | |
| GENERAL OF THE STATE OF TEXAS, | § | 250th JUDICIAL DISTRICT |
| | § | |
| Defendants. | § | |

## ORDER

On this day came to be heard Defendants' Motion to Dismiss for Lack of Jurisdiction. The Court, having considered the Motion and Exhibits, Plaintiff's Response and Exhibits thereto, and all other arguments of counsel, determines that Defendants' Motion to Dismiss for Lack of Jurisdiction should be DENIED in full. The Court has jurisdiction to hear the merits of Plaintiff's Protest Suit seeking recovery of $161,544.48 paid under protest, plus statutory interest and court costs.

SIGNED on March 9 , 2015.

_____
Judge Presiding

Case # D-1-GN-12-003920

003921159

*Statewide Materials Transport, Ltd. v. Glenn Hegar, et al.; Cause No. D-1-GN-12-003920*
Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Jurisdiction, Page 24



B





**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
  Tax Code (Refs & Annos)
    Title 2. State Taxation (Refs & Annos)
      Subtitle B. Enforcement and Collection (Refs & Annos)
        Chapter 112. Taxpayers' Suits (Refs & Annos)
          Subchapter B. Suit After Protest Payment (Refs & Annos)
            **§ 112.051. Protest Payment Required**

(a) If a person who is required to pay a tax or fee imposed by this title or collected by the comptroller under any law, including a local tax collected by the comptroller, contends that the tax or fee is unlawful or that the public official charged with the duty of collecting the tax or fee may not legally demand or collect the tax or fee, the person shall pay the amount claimed by the state, and if the person intends to bring suit under this subchapter, the person must submit with the payment a protest.

(b) The protest must be in writing and must state fully and in detail each reason for recovering the payment.

(c) The protest payment must be made within the period of time set out in Subdivision (3) of Subsection (c) of Section 111.104 of this code for the filing of refund claims.

CREDIT(S)

Acts 1981, 67th Leg., p. 1512, ch. 389, § 1, eff. Jan. 1, 1982. Amended by Acts 1983, 68th Leg., p. 460, ch. 94, § 6, eff. May 10, 1983; Acts 1989, 71st Leg., ch. 232, § 4, eff. Sept. 1, 1989.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

C




**Effective: October 1, 2011**

Vernon's Texas Statutes and Codes Annotated Currentness
  Tax Code (Refs & Annos)
    Title 2. State Taxation (Refs & Annos)
      Subtitle B. Enforcement and Collection (Refs & Annos)
        ↰▤ Chapter 112. Taxpayers' Suits (Refs & Annos)
          ↰▤ Subchapter B. Suit After Protest Payment (Refs & Annos)
        �María➧➡ **§ 112.052. Taxpayer Suit After Payment Under Protest**

(a) A person may bring suit against the state to recover an occupation, excise, gross receipts, franchise, license, or privilege tax or fee required to be paid to the state if the person has first paid the tax under protest as required by Section 112.051 of this code.

(b) A suit under this section must be brought before the 91st day after the date the protest payment was made, or the suit is barred, except that for the tax imposed by Chapter 171 for a regular annual period, if an extension is granted to the taxpayer under Section 171.202(c) for filing the report and the taxpayer files the report on or before the last date of the extension period, the protest required by Section 112.051 may be filed with the report to cover the entire amount of tax paid for the period, and suit for the recovery of the entire amount of tax paid for the period may be filed before the 91st day after the date the report is filed. If the report is not filed on or before the last date of the extension period, a protest filed with the report applies only to the amount of tax, if any, paid when the report is filed.

(c) The state may bring a counterclaim in a suit brought under this section if the counterclaim relates to taxes or fees imposed under the same statute and during the same period as the taxes or fees that are the subject of the suit and if the counterclaim is filed not later than the 30th day before the date set for trial on the merits of the suit. The state is not required to make an assessment of the taxes or fees subject to the counterclaim under any other statute, and the period of limitation applicable to an assessment of the taxes or fees does not apply to a counterclaim brought under this subsection.

(d) A taxpayer shall produce contemporaneous records and supporting documentation appropriate to the tax or fee for the transactions in question to substantiate and enable verification of a taxpayer's claim relating to the amount of the tax, penalty, or interest that has been assessed or collected or will be refunded, as required by Section 111.0041.

CREDIT(S)

Acts 1981, 67th Leg., p. 1512, ch. 389, § 1, eff. Jan. 1, 1982. Amended by Acts 1983, 68th Leg., p. 1373, ch.

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

283, § 6, eff. Sept. 1, 1983; Acts 1989, 71st Leg., ch. 232, § 5, eff. Sept. 1, 1989; Acts 1993, 73rd Leg., ch. 486, § 7.01, eff. Sept. 1, 1993; Acts 2011, 82nd Leg., 1st C.S., ch. 4 (S.B. 1), § 4.03, eff. Oct. 1, 2011.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT