# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00126-CV

**Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas, Appellants**

**v.**

**Mahindra USA, Inc., Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT NO. D-1-GN-17-003047, HONORABLE KARIN CRUMP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Glenn Hegar, Comptroller of Public Accounts (the Comptroller), and Ken Paxton, Attorney General of the State of Texas (collectively, the State) challenge the trial court's order denying the State's plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (providing for interlocutory appeal). In this interlocutory appeal, the State asserts that Mahindra USA, Inc. (Mahindra) untimely added to a pending administrative redetermination hearing a tax refund claim for allegedly overpaid franchise taxes. Mahindra responds that because section 111.207 of the Texas Tax Code tolls limitations for issues contested in a pending administrative redetermination hearing, the tax refund claim was timely. Because we conclude that the tax refund claim was untimely when filed and that section 111.207 does not toll the limitations to make the added claim timely, we reverse the district court's order and render judgment dismissing Mahindra's claim.

# I. FACTUAL AND LEGAL BACKGROUND

This appeal arises out of a franchise tax dispute. The relevant procedural and jurisdictional facts are undisputed. To provide context to the parties' dispute, we begin with an overview of the relevant statutory framework, first briefly explaining the relevant franchise tax calculations and then addressing taxpayer suits and their statute of limitations. We then proceed to the procedural history in this case before turning to the merits of the parties' arguments.

## A. Statutory Framework

Chapter 171 of the Tax Code provides for a franchise tax, Tex. Tax Code §§ 171.0001–.501, which the Texas Supreme Court has described as "a tax on the privilege of doing business in Texas," *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 437 (Tex. 2011); *see In re Nestle USA, Inc.*, 359 S.W.3d 207, 208 (Tex. 2012) (orig. proceeding) (*Nestle I*); *In re Nestle USA, Inc.*, 387 S.W.3d 610, 615 (Tex. 2012) (orig. proceeding) (*Nestle II*). As relevant here, the tax is calculated by: (1) subtracting from total revenues the Costs of Goods Sold (COGS) to produce the "margin," (2) multiplying the margin by an apportionment factor approximating the business done in Texas to produce the "apportionment margin," and (3) multiplying the taxable margin by one of two franchise tax rates—1% or 0.5%—to produce the amount due. *See* Tex. Tax Code §§ 171.002, .101(a); *see Nestle II*, 387 S.W.3d at 615 (describing calculation).

"The Comptroller is charged with administering the provisions of the franchise tax." *TGS-NOPEC*, 340 S.W.3d at 438 (citing Tex. Gov't Code § 403.011). If a taxpayer is dissatisfied with the franchise tax assessment, "[t]axpayer suits generally, and suits challenging the franchise tax in particular, are permitted by chapter 112 of the Tax Code." *Nestle I*, 359 S.W.3d at 208.

Chapter 112 permits three types of actions: a protest payment suit; a tax refund suit; and an injunctive action, the last of which is not at issue here. *Id.* at 208–11 (citing Tex. Tax Code §§ 112.052(a), .101(a), .151); *see Hegar v. EBS Sols., Inc.*, 549 S.W.3d 849, 851–52 (Tex. App.—Austin 2018, pet. granted) (noting sovereign immunity is waived "for the following three types of taxpayer suits: protest suits, suits seeking injunctive relief, and refund suits" (citations omitted)). "Chapter 112 allows no other actions to challenge or seek refunds of the taxes to which it applies." *Nestle I*, 359 S.W.3d at 209.

Section 112.052 expressly provides for a protest payment suit for franchise taxes: "[a] person may bring suit against the state to recover . . . [a] franchise . . . tax or fee required to be paid to the state if the person has first paid the tax under protest as required by Section 112.051 of this code." Tex. Tax Code § 112.052(a). Section 112.051 has three statutory prerequisites for bringing suit. First, a person must submit a protest with the payment for the amount claimed "[i]f a person who is required to pay a tax or fee imposed by this title or collected by the comptroller under any law . . . contends that the tax or fee is unlawful or that the public official charged with the duty of collecting the tax or fee may not legally demand or collect the tax or fee." *Id.* § 112.051(a). Second, the protest "must be in writing" and "state fully and in detail each reason for recovering the payment." *Id.* § 112.051(b). Third, the protest payment must be made "within the period of time set out in [section 111.104(c)(3)] for the filing of refund claims." *Id.* § 112.051(c). Suit must then be brought "before the 91st day after the date the protest payment was made, or the suit is barred." *Id.* § 112.052(b).

Section 112.151 permits a taxpayer to bring a tax refund suit against the comptroller "to recover an amount of tax, penalty, or interest that has been the subject of a tax refund claim," but only if the person has "filed a tax refund claim under Section 111.104 of this code." *Id.* § 112.151(a)(1). Under section 111.104, a tax refund claim may be filed with the Comptroller to determine if "an amount of tax, penalty, or interest has been unlawfully or erroneously collected." *Id.* § 111.104(a). Similar to the requirements for a protest payment suit, a claim for refund must "be written," "state fully and in detail each reason or ground on which the claim is founded," and be filed within the time period set out in section 111.104(c)(3). *Id.* § 111.104(c)(1)–(3).

Because section 111.104(c)(3) sets out the relevant time period for both a protest payment suit and a tax refund suit, we turn next to that provision. Section 111.104(c)(3) provides that refund claims under section 111.104 must be filed "before the expiration of the applicable limitation period as provided by this code or before the expiration of six months after a jeopardy or deficiency determination becomes final, whichever period expires later." *Id.* § 111.104(c)(3). When, as here, there was no jeopardy determination and the deficiency determination never became final because a petition for redetermination was timely filed, *see id.* § 111.009(b) ("If a petition for redetermination is not filed before the expiration of the period provided by this subsection, the determination is final on the expiration of the period."), the second clause of section 111.104(c)(3) does not apply and we are left to determine what constitutes the "applicable limitation period as provided by this code." We have previously concluded that for a tax refund suit the "applicable limitation period" described in section 111.104(c)(3) is "the period during which the comptroller may assess a deficiency for the tax," *id.* § 111.107, and that the applicable period during which the

4

Comptroller may assess a deficiency for the tax is within four years of the date the tax "becomes due and payable," *id.* § 111.201.[1] *See Formosa Plastics Corp. v. Sharp*, 979 S.W.2d 410, 413–14 (Tex. App.—Austin 1998, pet. denied); *Overhead Door Corp. v. Sharp*, 970 S.W.2d 74, 77 (Tex. App.—Austin 1998, no pet.).

Finally, the Tax Code expressly provides for the tolling of limitations in certain scenarios, and it is this tolling provision that is at the crux of the parties' dispute. Section 111.207, which is titled "Tolling of Limitation Period," provides, as relevant here:

> (a) In determining the expiration date for a period when a tax imposed by this title may be assessed, collected, or refunded, the following periods are not considered:
>
> . . . .
>
> > (3) the period during which an administrative redetermination or refund hearing is pending before the comptroller; . . .
>
> . . . .
>
> (b) The suspension of a period of limitation under Subsection (a)(1), (2), or (3) is limited to the issues that were contested under those subdivisions.

Tex. Tax Code § 111.207(a)–(b). With this statutory framework in mind, we turn to the procedural history of this case.

---

[1] The franchise tax is "due May 15, of each year after the beginning of the regular annual period." Tex. Tax Code § 171.152(a); *see id.* § 171.151(3) (defining the regular annual period as "beginning each year on January 1 and ending the following December 31").

5

## B. Procedural History

Mahindra—which describes itself as a distributor of farm tractors and accessories—reported and paid franchise taxes for tax years 2008 through 2011 (the Tax Period). However, the Comptroller conducted an audit of Mahindra's reported taxes and issued a notice of determination on April 24, 2013,[2] concluding Mahindra owed an additional franchise tax liability of $569,380.06—$467,950.38 in additional taxes; $35,151.20 in penalties; and $66,278.48 in interest. *See* Tex. Tax Code § 111.008 ("Deficiency Determination"). Dissatisfied with the deficiency determination, Mahindra initiated administrative review on May 23, 2013, by requesting redetermination. *See id.* § 111.009. Its request for redetermination stated two issues—a tax rate issue and a COGS issue:

> There were two issues raised during the examination which are subject to this request. The first issue was whether or not the taxpayer qualified as a wholesaler eligible for the .5% franchise tax rate. The second issue is the disallowance of costs which were erroneously described in the taxpayer's federal income tax return as "Sales Incentives" for purposes of calculating cost of goods sold.

The contested case was referred to the State Office of Administrative Hearings (SOAH). According to Mahindra, a November 1, 2016 SOAH Scheduling Order required Mahindra to submit any additional evidence in support of its position by December 19.

On December 19, Mahindra submitted its "Additional Argument for Petitioner," which raised for the first time the following issue: "[Mahindra] has historically overstated the

---

[2] Mahindra and the Comptroller entered into an agreement to extend the period of limitations to May 15, 2013, for tax year 2008 and thus do not dispute the timeliness of the Comptroller's determination. *See* Tex. Tax Code § 111.203 ("Agreements to Extend Period of Limitations").

6

amount of sales apportioned to Texas as [Mahindra] has not appropriately applied the apportionment requirements for tangible personal property." Accordingly, Mahindra asserted that "it has the right to amend the apportionment factors originally reported for Report Years 2008 through 2011 by way of employing the ultimate destination sourcing methodology as opposed to the origin-based sourcing methodology which was historically employed by [Mahindra]." Mahindra therefore "request[ed] that the Administrative Law Judge [ALJ] agree with its revised sourcing and honor the new apportionment calculations which are based on an ultimate destination sourcing."

On March 1, 2017, the ALJ issued its proposal for decision, affirming the Comptroller's initial tax determination as to the tax rate and COGS issues. As to the apportionment issue raised in the Additional Argument, the ALJ concluded that the apportionment claim—as a refund claim—"was submitted more than four years after the franchise tax was due for the latest report year at issue, 2011"; tolling did not apply to the apportionment claim because it "was not included within the issues that were contested in the statement of grounds that initiated the redetermination hearing or in an amended statement of grounds"; and even if tolling did apply, the apportionment claim was supported only by "bare assertions," which are "insufficient to prove that tax was paid in error or that Staff's denial of the refund was erroneous." The Comptroller adopted the proposal on May 5; Mahindra filed its motion for rehearing, which the Comptroller promptly denied on June 2; and on June 16, Mahindra submitted $654,060.31 as payment of the tax, penalties, and interest, with its protest letter, which included a "Statement of Grounds for Protest" listing the tax rate, COGS, and apportionment issues. *See id.* § 112.051(b) ("The protest . . . must state fully and in detail each reason for recovering the payment.").

7

On June 30, 2017, Mahindra sued the State by filing its "Original Petition for Refund of Tax Paid under Protest." In its petition, Mahindra raised the tax rate, COGS, and apportionment issues. Regarding the apportionment issue, Mahindra requested that "Taxpayer should have been given credit or a refund for such overpaid amounts." In a footnote to the apportionment issue, Mahindra also requested that "[i]n the alternative, [Mahindra] should be refunded all amounts overpaid" because Mahindra complied with the requirements for a tax refund suit, as listed in section 112.151(a). *See id.* § 112.151(a)(1)–(3). Mahindra attached the protest letter to the petition, but did not attach its motion for rehearing. *See id.* §§ 112.053(c) (requiring copy of written protest to be attached to original petition in protest payment suit), .151(d) (requiring copy of motion for rehearing to be attached to original petition in tax refund suit). The State answered and filed its plea to the jurisdiction over Mahindra's apportionment claim. In its response to the plea, Mahindra argued that the apportionment claim was timely as a protest payment, but also, "[i]n the alternative, the apportionment claim should be treated as a timely refund claim, and [Mahindra] has satisfied the jurisdictional requirements for such a refund claim." *See id.* § 112.151 (Suit for Refund). After a hearing, the district court denied the State's plea to the jurisdiction. The State now appeals the interlocutory order to this Court. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (providing for interlocutory appeal from grant or denial of plea to jurisdiction by governmental unit).

## II.  STANDARD OF REVIEW

"A plea to the jurisdiction challenges the court's authority to decide a case." *Heckman v. Williamson County*, 369 S.W.3d 137, 149 (Tex. 2012). We review a plea questioning the trial court's subject matter jurisdiction de novo, affording no deference to the trial court's ruling.

8

*Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). Analysis of whether this authority exists begins with the plaintiff's live pleadings and continues with evidence the parties presented below that is relevant to the jurisdictional issues. *Id.* "When, as here, the facts relevant to jurisdiction are undisputed, the court should make the jurisdictional determination as a matter of law based solely on those undisputed facts." *EBS*, 549 S.W.3d at 861 (quoting *Machete's Chop Shop, Inc. v. Texas Film Comm'n*, 483 S.W.3d 272, 278 (Tex. App.—Austin 2016, no pet.)). If the pleadings lack facts sufficient to affirmatively demonstrate jurisdiction, but also do not demonstrate incurable defects in jurisdiction, then the issue is one of pleading sufficiency and the plaintiff must be allowed the opportunity to amend. *Miranda*, 133 S.W.3d at 226–27. If the pleadings or undisputed facts affirmatively negate jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227; *Gattis v. Duty*, 349 S.W.3d 193, 209 (Tex. App.—Austin 2011, no pet.) (reversing and rendering judgment dismissing claims for want of jurisdiction because defects are "a function of pled or undisputed facts that affirmatively negate jurisdiction").

A de novo standard of review is also appropriate when, as here, the material jurisdictional facts are undisputed and the analysis of the plea to the jurisdiction turns on a question of law regarding statutory construction. *Southwest Pharmacy Sols., Inc. v. Texas Health & Human Servs. Comm'n*, No. 03-11-00802-CV, 2013 WL 3336868, at *2 (Tex. App.—Austin June 27, 2013, no pet.) (mem. op.) (citing *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006)). "When construing a statute, our primary objective is to give effect to the Legislature's intent," and we seek that intent "'first and foremost' in the statutory text." *Colorado County v. Staff*, 510 S.W.3d 435, 444 (Tex.

2017) (quoting *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015)). "'Where text is clear, text is determinative'" and "we may not look beyond its language for assistance in determining legislative intent unless the statutory text is susceptible to more than one reasonable interpretation." *Id.* (quoting *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009)).

### III. ANALYSIS

In one issue, the State challenges the trial court's jurisdiction to decide Mahindra's apportionment claim, but does not dispute the trial court's jurisdiction over Mahindra's claims related to the tax rate and COGS issues. The State argues that because Mahindra did not raise the apportionment issue in the administrative redetermination hearing until after the four year statute of limitations had run, the apportionment claim is untimely as either a protest payment suit or a tax refund suit, and section 111.207(a)(3) does not toll limitations for the untimely claim. In response, Mahindra does not deny that it first raised the apportionment issue on December 19, 2016—more than four years after the relevant time period. But Mahindra argues that section 111.207(a)(3) does not require the issue to be raised before the four years had passed, so long as the issued was raised and "contested" during the pendency of the administrative redetermination hearing that was initiated within the four year limitations period.

Mahindra brought the apportionment claim as a part of its protest payment suit under section 112.052, but it also pleaded the apportionment claim as a tax refund suit under section 112.151 in the alternative. *See* Tex. Tax Code §§ 112.052 (authorizing protest payment suits), .151 (authorizing tax refund suits). As we have previously noted, "[d]espite the similar intent of both methods to provide access to a refund of taxes paid, the legislature created two distinct and exclusive

10

remedies for tax refund suits and tax protest suits—each with different procedural requirements."

*Local Neon Co. v. Strayhorn*, No. 03-04-00261-CV, 2005 WL 1412171, at *3 (Tex. App.—Austin

June 16, 2005, no pet.) (mem. op.) (citing *Strayhorn v. Lexington Ins.*, 128 S.W.3d 772, 779 (Tex.

App.—Austin, 2004), *aff'd*, 209 S.W.3d 83 (Tex. 2006)). We explained:

> In a tax *refund* suit, a taxpayer must file a refund claim with the Comptroller providing the grounds on which the claim is founded, file a motion for rehearing with the Comptroller after the refund claim is denied, and file a refund suit within 30 days after the denial of that motion for rehearing. [Tex.] Tax Code § 112.151. In a tax *protest* suit, by contrast, a person must pay the amount assessed, submit with the tax payment a protest letter, and file suit within 90 days of the date payment was made under protest. *Id.* §§ 112.051–.052.

*Id.* at *3. Because there are different procedural requirements for protest payment suits and tax

refund suits that affect the relevant statute of limitations and jurisdictional requirements, we analyze

each suit separately in turn. *See, e.g.*, *Bullock v. Mel Powers Inv. Builder*, 682 S.W.2d 400, 402–03

(Tex. App.—Austin 1984, no writ) (analyzing separately for satisfaction of jurisdictional

requirements taxpayer's refund claims under statute authorizing protest payment suit and statute

authorizing tax refund suit). We consider whether the trial court had jurisdiction over the

apportionment claim first as a protest payment suit and then as a tax refund suit.

## A. Jurisdiction Over Protest Payment Suit

As a threshold matter, we note that the State argues Mahindra could not have made

a timely protest payment with respect to the apportionment claim "because the Comptroller did not

demand payment based on apportionment, and Mahindra is not really protesting the Comptroller's

assessment of its apportionment factor because that was not audited." Accordingly, the State argues

11

that Mahindra's apportionment claim is not a refund claim made in a protest payment suit under section 112.052, but a claim in a tax refund suit. We agree with the State.

In its Original Petition for Refund of Tax Paid under Protest to the district court, Mahindra asserts that "Taxpayer's franchise tax liability was erroneously determined based upon a source-based, rather than a destination-based apportionment calculation resulting in the calculation of a higher taxable margin and a related overpayment of tax" and "Taxpayer's apportionment formula should have been based upon destination-based shipping rather than origination-based shipping, and the Taxpayer should have been given credit or a refund for such overpaid amounts." In its briefing to this Court, Mahindra admits that the erroneous determination was its own error, not the Comptroller's, and that its error "resulted in an inflated apportionment factor . . . resulting in a substantial overpayment of franchise taxes." And in its Additional Argument in which it raised the apportionment issue, Mahindra stated that it "has historically overstated the amount of sales apportioned to Texas as [Mahindra] has not appropriately applied the apportionment requirements." Thus, Mahindra is attempting to shoehorn its tax refund claim into a protest payment suit, presumably to take advantage of the distinct procedural mechanisms for a protest payment suit. But its attempt fails for the following two reasons.

First, as a prerequisite to bringing a protest payment suit, a person "must submit with the payment a protest." Tex. Tax Code § 112.051(a). Although Mahindra submitted a protest that listed the apportionment issue alongside other issues with its 2017 payment for the deficiency redetermination, Mahindra did not submit a protest with its alleged "related overpayment of tax" based on its own erroneous apportionment calculation in initially paying its taxes for the Tax Period

12

more than four years earlier. Accordingly, Mahindra's protest as to the apportionment issue was not submitted with its tax payment related to the apportionment issue and fails to meet the statutory prerequisite to bring a protest payment suit.

Second, a protest payment suit is permitted if a person "is required to pay a tax or fee imposed by this title or collected by the comptroller under any law[.]" *Id.* But Mahindra never alleges it was "required" to pay the apportionment tax by the Tax Code or by the Comptroller. In fact, it characterizes its payment as "erroneously determined" by itself, not the Comptroller. Erroneously paid taxes not required by law or the Comptroller, as Mahindra's apportionment claim alleges, are recoverable as a tax refund claim, but not as a refund request in a protest payment suit. *Compare id.* § 112.052(a) (providing for protest payment suit for franchise tax "required to be paid to the state"), *with id.* §§ 111.104(a) (noting that refund is available for "an amount of tax, penalty, or interest [that] has been unlawfully *or erroneously collected*" (emphasis added)), 112.151(a) (permitting tax refund suit for a refund claim brought under section 111.104).

For these reasons, we conclude that the statutory provisions providing for a protest payment suit, *see id.* §§ 112.051–.060, do not provide the district court with jurisdiction over Mahindra's apportionment claim and the pleadings and undisputed jurisdictional facts affirmatively negate jurisdiction, *see Bullock v. Amoco Prod. Co.*, 608 S.W.2d 899, 901 (Tex. 1980) (holding that statutory predecessor providing for protest payment suit "created a right not existing at common law and prescribed a remedy to enforce the right"; "[t]hus, the courts may act only in the manner provided by the statute which created the right"); *see also Nestle I*, 359 S.W.3d at 212 ("Because these taxpayer rights of action are created by statute, waiving the State's immunity from suit, 'the

13

courts may act only in the manner provided by the statutes which created the right.'" (quoting *Dan Ingle, Inc. v. Bullock*, 578 S.W.2d 193, 194 (Tex. App.—Austin 1979, writ ref'd))). Because we conclude that jurisdiction does not exist under these statutory provisions, we need not consider the State's or Mahindra's arguments regarding tolling under section 111.207 as to the protest payment suit. Instead, we turn to the statutory provisions providing for a tax refund suit to determine whether they provide jurisdiction over Mahindra's apportionment claim.

**B.  Jurisdiction Over Tax Refund Suit**

The State argues that the trial court lacks jurisdiction over Mahindra's apportionment claim as an untimely tax refund claim. We again agree with the State.

Section 112.151 imposes certain requirements that must be met before a trial court has jurisdiction over the tax refund claim. Tex. Tax Code § 112.151(a). "This statutory scheme makes clear that the trial courts only have jurisdiction over tax refund claims that are first raised in accordance with Tax Code section 111.104 and then appealed in a motion for rehearing under Tax Code section 111.105." *Combs v. Chevron, Inc.*, 319 S.W.3d 836, 844 (Tex. App.—Austin 2010, pet. denied); *see AT&T Corp. v. Rylander*, 2 S.W.3d 546, 553 (Tex. App.—Austin 1999, pet. denied) ("Under the new [1991] Tax Code scheme, limitations became tied to the filing of an *administrative claim for refund* within four years of the date the assessment became due and the subsequent filing of suit following the denial of a motion for rehearing.").

We therefore turn to the requirements of section 111.104 for raising an administrative tax refund claim, which states:

(c) A claim for refund must:

> (1) be written;
>
> (2) state fully and in detail each reason or ground on which the claim is founded; and
>
> (3) be filed before the expiration of the applicable limitation period as provided by this code or before the expiration of six months after a jeopardy or deficiency determination becomes final, whichever period expires later.

Tex. Tax Code § 111.104(c). Related to these requirements, the following jurisdictional facts are undisputed: (1) the first time Mahindra submitted a written claim raising the apportionment issue was December 19, 2016; (2) there was no jeopardy determination and the deficiency determination never became final because a petition for redetermination was timely filed, *see id.* § 111.009(b) ("If a petition for redetermination is not filed before the expiration of the period provided by this subsection, the determination is final on the expiration of the period."); and (3) the four year statute of limitations for tax refund claims expired before December 19, 2016, unless section 111.207(c)(3) tolled limitations due to a pending administrative redetermination hearing. Section 111.207(c)(3) provides that "the period during which an administrative redetermination or refund hearing is pending before the comptroller" is "not considered" in "determining the expiration date for a period when a tax imposed by this title may be assessed, collected, or refunded," but the "suspension of a period of limitation" is "limited to the issues that were contested." *Id.* § 111.207(a)(3), (b).

Mahindra argues as follows: The refund claim was filed in a tax administrative redetermination hearing that began on March 23, 2013; Mahindra contested the apportionment issue by filing its written refund claim as to that issue on December 19, 2016; the administrative case

15

record closed on February 6, 2017, and the hearing concluded on June 2, 2017; because the issue was contested during the pending redetermination hearing, limitations was suspended under section 111.207(a)(3) from March 23, 2013 until the hearing concluded; therefore, Mahindra's apportionment claim was timely filed as a tax refund claim under section 111.104. But Mahindra's argument puts the cart before the horse. Section 111.104(c)(3) requires that the refund claim filed with the Comptroller must "be filed *before* the expiration of the applicable limitations period[.]" *Id.* § 111.104(c)(3) (emphasis added). Thus, a statutory prerequisite to bringing a tax refund suit is that the administrative tax refund claim must be timely when filed. If the filing of the administrative tax refund claim—i.e., contesting the issue—is what triggers section 111.207 to toll the statute of limitations, as Mahindra argues, then section 111.207 cannot serve to also toll limitations prior to the filing of an untimely administrative tax refund claim to make it timely when filed. *Cf. Wilson v. State*, 272 S.W.3d 686, 690 (Tex. App.—Austin 2008, pet. denied) ("The tolling is expressly restricted by issues[.]"). Nor does section 111.207's text indicate that the legislature intended to provide for the resurrection of an untimely administrative refund claim. *See Heritage on San Gabriel Homeowners Ass'n v. Texas Comm'n on Envtl. Quality*, 393 S.W.3d 417, 427 (Tex. App.—Austin 2012, pet. denied) (noting we will not presume legislature intended something "when there is nothing in the language of the statute to indicate that intent").

The apportionment issue was not contested in the administrative redetermination hearing prior to Mahindra filing the apportionment claim with the Comptroller on December 19, 2016. Mahindra argues that "the Comptroller opened a two-way door to the reevaluation of the payments made from 2008–2011" and "[t]he Comptroller took a look and contested certain matters;

16

[Mahindra] took a look and contested others." But the Comptroller "took a look" before limitations ran and did not untimely raise any matters in the administrative proceedings. In contrast, Mahindra waited until after limitations had expired—and more than three years after the Comptroller completed its audit—to raise the apportionment issue as a tax refund claim in the redetermination hearing, even though the statute requires the apportionment claim be filed before limitations expired. Tex. Tax Code § 111.104(c)(3). Accordingly, section 111.207(a)(3) did not suspend limitations prior to Mahindra filing the apportionment claim, and limitations expired before Mahindra filed the apportionment refund claim with the Comptroller. Because the pleadings and undisputed facts affirmatively show that Mahindra failed to follow the administrative procedures required by statute, the trial court lacks jurisdiction over Mahindra's apportionment tax refund claim. *See Combs*, 319 S.W.3d at 845 (holding no jurisdiction over tax refund claims because claimant failed to fulfill all of section 111.104's administrative prerequisites to filing a tax refund suit).

### III. CONCLUSION

Having concluded that the pleadings and undisputed jurisdictional facts affirmatively negate the trial court's jurisdiction over Mahindra's apportionment claim as either a protest payment suit or a tax refund suit, we reverse the district court's order denying the State's plea to the jurisdiction and render judgment granting the plea to the jurisdiction and dismissing Mahindra's apportionment claim for want of jurisdiction.

17

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Kelly

Reversed and Rendered

Filed:   February 28, 2020