# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00740-CV

---

### 1st Global, Inc., Appellant

### v.

### Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas, Appellees

---

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-18-003916, THE HONORABLE DUSTIN M. HOWELL, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

This is a franchise-tax suit. 1st Global, Inc. sued the state Comptroller and Attorney General (collectively "the State") to recover an amount of franchise taxes it paid for the year 2018 that it claims was excessive. The State filed a motion to dismiss the suit, asserting that 1st Global had not complied with one of the requirements for the waiver of sovereign immunity. The trial court granted the motion and dismissed the suit for lack of jurisdiction. We will affirm.

### Factual and Procedural Background

1st Global describes itself as the reporting entity of a combined group of investment advisors who assist individuals with their investments. Although 1st Global maintains a Dallas office to support transactions initiated by the advisors, at least some of these advisors live and work outside of Texas. 1st Global generates its revenue in the form of commissions and fees from the services performed by the advisors.

The underlying dispute between 1st Global and the Comptroller goes back several years and involves how 1st Global's gross receipts should be apportioned for franchise-tax purposes. Under the Texas Tax Code, apportionment of taxable margin is based on a taxable entity's "business done in this state." Tex. Tax Code § 171.103(a)(2). In a separate administrative proceeding involving 1st Global, the Comptroller previously announced his position that receipts generated through the provision of services by 1st Global's financial advisors, wherever they are located, should all be apportioned to Texas because of its Dallas office. 1st Global, on the other hand, asserts that it earns its revenues in the states where its advisors perform services on its behalf, which would result in its owing substantially less franchise taxes to the State of Texas.

Chapter 171 of the Tax Code contains provisions pertaining to franchise taxes. Payment of franchise taxes by an ongoing taxable entity is due May 15 for the preceding calendar year. *Id*. § 171.152(c). Pursuant to section 171.202(a), a taxable entity must file an annual report containing the financial information necessary to compute the amount of franchise tax owed. The entity's regular annual report must be filed "before May 16." *Id.* § 171.202(b).

Chapter 112 of the Tax Code contains provisions relating to taxpayer suits. Subsection (a) of section 112.052 provides that a person may bring a tax-protest suit against the state to recover a tax only if the person has first paid the tax under protest "as required by Section 112.051." *Id*. § 112.052(a); *see Texley, Inc. v. Hegar*, 613 S.W.3d 322, 326 (Tex. App.—Austin 2020, no pet.). Section 112.051(a), in turn, provides that a person who intends to bring a suit complaining about the imposition of a tax must first pay "the amount claimed by the state" and must submit a protest along with the payment:

> If a person who is required to pay a tax or fee imposed by this title or collected by
> the comptroller under any law, including a local tax collected by the comptroller,

2

contends that the tax or fee is unlawful or that the public official charged with the duty of collecting the tax or fee may not legally demand or collect the tax or fee, *the person shall pay the amount claimed by the state*, and if the person intends to bring suit under this subchapter, the person must submit with the payment a protest.

Tax Code § 112.151(a) (emphasis added).

1st Global filed this tax-protest suit in connection with its 2018 regular annual report. In its 2018 report, 1st Global self-assessed its franchise taxes due for that tax year on the basis of the Comptroller's earlier-stated position regarding apportionment, i.e., that receipts generated through the provision of services by 1st Global's financial advisors must all be apportioned to Texas. Along with its annual report, 1st Global paid that amount of taxes and, at the same time, filed a protest letter contesting the correctness of the amount paid. At that time, however, the Comptroller had not determined, by any available process, that any specific amount was due from 1st Global for the 2018 tax year.

The State moved to dismiss 1st Global's suit on the ground that 1st Global had not paid "the amount claimed by the state" as required by section 112.151(a) because the state had not claimed any specific amount at that time and 1st Global therefore had not met section 112.151's requirements for a waiver of sovereign immunity. It is undisputed that at the time 1st Global filed its suit the Comptroller had not, as to 1st Global, conducted an audit, assessed a liability, issued a jeopardy determination, determined a deficiency, or issued a refund denial for tax year 2018. There are no disputed fact issues in this case. The trial court granted the State's motion and dismissed 1st Global's suit for lack of jurisdiction. 1st Global perfected this appeal.

## Discussion

1st Global asserts three issues on appeal: (1) Whether Texas Tax Code section 112.052(b) recognizes that a taxpayer may file a protest letter with its regular annual report;

3

(2) Whether the phrase "amount claimed by the state" in section 112.051(a) of the Tax Code includes the tax calculated and self-assessed by a taxpayer in its regular annual report; and (3) Whether 1st Global's live petition pleads sufficient facts to establish a waiver of sovereign immunity. Because we believe the second issue is the dominant issue in this appeal, we will discuss it first.

This Court has held that section 112.052 of the Tax Code can operate as a waiver of the state's immunity in franchise-tax protest suits only if the taxpayer "strictly complies with the statute's administrative and procedural requirements." *OGCI Training, Inc. v. Hegar*, No. 03-16-00704-CV, 2017 WL 4899015, at *5 (Tex. App.—Austin Oct. 27, 2017, no pet.) (mem. op.). Thus, since section 112.051(a) requires that the taxpayer "pay the amount claimed by the state" along with its protest, the dispositive issue here is whether 1st Global paid "the amount claimed by the state" when it submitted its protest.

In the context of the present legal issue, this Court is not free to give section 112.051(a) whatever interpretation we think is the fairest or most efficient or even the most reasonable. Rather, we are bound by the well-established rule that "a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." Tex. Gov't Code § 311.034; *see also In re Nestle USA, Inc.*, 359 S.W.3d 207, 212 (Tex. 2012); *Texas Facilities Comm'n v. Speer*, 559 S.W.3d 245, 249 (Tex. App.—Austin 2018, no pet.). Thus, even if ambiguity exists in the phrase "the amount claimed by the state," we are bound by the rule that "when construing a statute that purportedly waives sovereign immunity, we generally resolve ambiguities by retaining immunity." *Texas Dep't of Transp. v. York*, 284 S.W.3d 844, 846 (Tex. 2009) (quoting *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697 (Tex. 2003)). Thus, the issue for decision here is a narrow one: Under the

undisputed facts of the present case, did the statutory requirement for payment of "the amount claimed by the state" clearly and unambiguously include 1st Global's self-assessment of its franchise tax liability even though the Comptroller had not affirmatively asserted—or even identified—a specific amount of franchise taxes owed by 1st Global?

1st Global argues that this Court's opinion in *Hegar v. Mahindra USA, Inc.*, No. 03-18-00126-CV, 2020 WL 962415, at *5 (Tex. App.—Austin, Feb. 28, 2020, no pet.) (mem. op.), stands for the proposition that a person need only be *required* to pay a tax imposed by the Tax Code to be permitted to file a protest suit. 1st Global misreads *Mahindra*. *Mahindra* focused on a different requirement of section 112.051(a)—that a taxpayer is "required" to pay a tax or fee before section 112.051(a) can operate as a waiver of sovereign immunity. Because the taxpayer there made no assertion that it was required to pay the self-assessed amount, this Court held that that provision of section 112.051(a) had not been satisfied. *Id.* at *5-6 ("Erroneously paid taxes not required by law or the Comptroller, as Mahindra's apportionment claim alleges, are recoverable as a tax refund claim, but not as a refund request in a protest payment suit."). Because *Mahindra* did not address the portion of section 112.051(a) at issue here, it cannot be read so broadly as to represent a holding on that separate statutory requirement.

1st Global next argues that the term "state" in section 112.051(a) is not limited to the Comptroller, but also includes statutes enacted by the legislature. Consequently, the argument goes, "[t]he state, through the laws set out in Chapter 171 of the Tax Code, imposes an annual liability for the franchise tax on all taxable entities doing business in Texas." This argument may be correct as far as it goes but does not take into account that section 112.051(a) requires that there be payment of an "amount claimed." Under other circumstances, a statute might, by itself, represent an "amount claimed by the state" if, for example, the legislature

5

enacted a law fixing the annual franchise tax for a named class of taxpayers at a specific amount.[1] But there is no such statute here.

Finally, 1st Global argues that the Texas Supreme Court's opinion in *In re Nestle USA*, 387 S.W.3d at 612, "impliedly" held that a self-assessment and payment of taxes would satisfy section 112.051(a)'s requirement of "amount claimed by the state" even in the absence of an affirmative demand or declaration by the Comptroller. In that case Nestle protested its self-assessed franchise-tax payment on the ground that the entirety of Texas's franchise tax scheme violated the Texas Constitution's mandate that "taxation shall be equal and uniform." *Id.* at 612. It is true that the supreme court accepted jurisdiction over (and rejected) the merits of Nestle's claims, but the issue of whether Nestle had paid an "amount claimed by the state" was not raised by the parties or discussed by the court. Although courts do have a duty to raise jurisdictional issues on their own motion, we decline to hold that an acceptance of jurisdiction by an appellate court in an earlier case constitutes an affirmative and authoritative decision on a jurisdictional issue that was neither raised by the parties nor discussed in the court's opinion. *See Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 555 n.12 (Tex. 2019) ("Carowest asserts that it is 'significant' that we did not question jurisdiction in those cases in the first instance. Perhaps so, but we simply cannot ascribe to tacit acceptance the same significance we would give to an express consideration and analysis of the issue." (Citation omitted.)).

We believe the phrase "the amount claimed by the state" can reasonably be read to require some sort of affirmative claim by the state for a specific amount of franchise taxes. Accordingly, regardless of how appealing 1st Global's argument may be that the words "the

---

[1] *See, e.g.*, *In re Nestle USA, Inc.*, 387 S.W.3d 610, 612 (Tex. 2012) ("Texas' first franchise tax, enacted in 1893, was $10 annually for 'each and every private domestic corporation heretofore chartered or that may be hereafter chartered under the laws of this State....'").

6

amount claimed by the state" should be read to include a self-assessment based on the Comptroller's previously announced general legal position regarding apportionment, the language of section 112.051(a) does not rise to the level of "clear[ly] and unambiguous[ly]" waiving sovereign immunity when the only "amount claimed" is a self-assessment. We overrule 1st Global's second issue.

In its first issue, 1st Global argues that section 112.052(b) of the Tax Code recognizes that *any* taxpayer may file a protest letter with a regular annual report. We disagree. That subsection of the Code created an exception whereby the protest required by section 112.051 could be filed with the taxpayer's annual report "if an extension is granted to the taxpayer under Section 171.202(c) for filing the report." Tax Code § 112.052(b).[2] Section 171.202(c), however, provides for an extension only to a "taxable entity that is not required by rule to make its tax payments by electronic funds transfer." *Id*. § 171.202(c). But 1st Global *is* required to make its tax payments by electronic funds transfer. *See Hegar v. 1st Glob., Inc.*, No. 03-18-00411-CV, 2019 WL 6765754, at *5 (Tex. App.—Austin, Dec. 12, 2019, no pet.) (mem. op.) ("We agree with the Comptroller that 1st Global sought and received an extension under Subsection (e), not Subsection (c)."). Section 112.052(b) therefore does not apply to 1st Global. Nor do we think section 112.052(b) can reasonably be read to mean that *all* taxpayers can file a protest letter with their regular annual report. We overrule 1st Global's first issue.

1st Global's third issue is whether its live petition pleaded sufficient facts to establish a waiver of sovereign immunity. In its Appellant's Brief, 1st Global asserts that "[t]he

---

[2] By a statute effective September 1, 2021, the legislature amended section 112.052(b) to delete this exception in its entirety. *See* Act of May 19, 2021, 87th Leg., R.S., ch. 331, § 5, sec. 112.052(b), 2021 Tex. Sess. Law Serv. 682, 682. The present case, however, is governed by the old law, *id.* § 12, which can be found at Act of May 19, 1989, 71st Leg., R.S., ch. 232, § 5, sec. 112.052, 1989 Tex. Gen. Laws 1070, 1070-71.

only disputed issue in 1st Global's case is whether, under the specific facts present herein, 1st Global paid the 'amount claimed by the state.'"  But the basic facts underlying the question of whether 1st Global paid "the amount claimed by the state" are undisputed.  Accordingly, 1st Global's assertion that a disputed issue of fact exists as to whether it paid an "amount claimed by the state" is merely a conclusion of fact or law, and no amount of repleading could alter the underlying facts.  We overrule 1st Global's third issue.

## Conclusion

Having overruled 1st Global's issues on appeal, we affirm the trial court's judgment dismissing 1st Global's suit for lack of jurisdiction.

_____

J. Woodfin Jones, Justice

Before Justices Baker, Triana, and Jones*
  Dissenting Opinion by Justice Triana

Affirmed

Filed:   October 29, 2021

*Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).

8